

**MURIEL GOODE-TRUFANT**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**Genan F. Zilkha**
Phone: 212-356-2212
Fax: 212-356-2019
E-mail:gzilkha@law.nyc.gov

July 1, 2025

**Via ECF**
Honorable Katherine Polk Failla
United States District Court for the
Southern District of New York
40 Foley Square, Courtroom 618
New York, New York 10007

      Re:    **Dietmar Detering v. The City of New York**
              **Case. No. 25-cv-2100(KPF) Request for a Pre-Motion Conference**

Your Honor:

      This Office represents Defendant City of New York ("City") in the above-entitled action. Pursuant to Section 4(A) of the Court's Individual Practices, the City submits this letter to request a pre-motion conference to discuss an anticipated pre-answer motion to dismiss the Complaint ("Compl.")(ECF No. 1) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff does not consent to this motion.

    **A. Background**

      Plaintiff is a member of the public ("Citizen Reporter") who frequently submits complaints ("Citizen Complaints") to the New York City Department of Environmental Protection ("DEP") reporting alleged violations of the City's Noise Code ("Noise Code") under DEP's Citizen Reporter program. The Citizen Reporter program is governed by Administrative Code of the City of New York ("Admin. Code") § 24-261(d) and (e). Penalties for Noise Code violations range from $440 to $1,750. Until January 2024, pursuant to Admin. Code § 24-261(d) and (e), a Citizen Reporter who submitted a Citizen Complaint to DEP identifying a Noise Code violation with supporting evidence would be entitled to 25% of the penalty collected based on DEP's successful prosecution of such a violation. Compl. ¶ 10. If DEP declined to prosecute the violation within a specified time-period, the Citizen Reporter could self-prosecute the violation and, if successful, would be entitled to 50% of the penalty collected. Compl. ¶ 10. In 2023, the New York City Council passed Local Law 16 ("LL16") which took effect in January 2024 and capped the amount paid to Citizen Reporters at $5 or $10 per violation. Compl. ¶ 16. Plaintiff unsuccessfully challenged LL16 in a proceeding under Article 78 of the New York Civil Practice Law and Rule ("CPLR") captioned Detering v. N.Y. City Envtl. Control Bd., 2024 N.Y. Slip Op 32030[U], *5 (Sup. Ct., N.Y. Co. 2024) ("Detering I"). The decision in Detering I is currently on appeal. In the instant action, Plaintiff alleges that, after LL16 took effect, he was improperly paid the $5 or $10 capped payments for Citizen Complaints he filed with DEP for which administrative decisions were issued before LL16 took effect. Compl. ¶ 28. As a result, Plaintiff alleges a variety of constitutional claims addressed below. Compl. ¶¶ 36-47.

**B. First, the Complaint Fails to State a Claim for a Taking Under the Fifth Amendment to the United States Constitution**

A regulatory taking "occurs where even absent a direct physical appropriation, governmental regulation of private property 'goes too far' and is 'tantamount to a direct appropriation or ouster.'" 1256 Hertel Ave. Assoc., LLC v. Calloway, 761 F.3d 252, 263 (2d Cir. 2014)(citations omitted). A mere reduction in property value does not suffice. "The caselaw 'uniformly reject[s] the proposition that diminution of property value' is grounds for a regulatory taking." ABN 51st St. Partners v New York, 724 F. Supp. 1142, 1155 (S.D.N.Y. 1989) (citations omitted).

"Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, which is analyzed under the framework created in" Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978) ("Penn Central"). Bens BBQ, Inc. v. Co. of Suffolk, 858 F. App'x 4, 8 (2d Cir. 2021) (citations omitted). In order to determine whether a non-categorical taking has occurred, courts "must weigh '(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.'" Curto v. Erie Co. Water Auth., No. 24-29, 2025 U.S. App. LEXIS 390, at *5 (2d Cir Jan. 8, 2025) (quoting Buffalo Teachers Fedn. V. Tobe, 464 F.3d 362, 375 (2d Cir. 2006)).

Any alleged taking here is "non-categorical" because Plaintiff is still receiving either $5 or $10 from the penalty collected for each successfully prosecuted Noise Code violation. Regarding the first Penn Central factor – economic impact of the regulation – although LL16 does have an economic impact on Plaintiff, it is "long established that mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." Concrete Pipe & Prods. v Constr. Laborers Pension Trust, 508 U.S. 602, 645 (1993); see e.g. Park Ave. Tower Assoc. v. New York, 746 F.2d 135, 139 (2d Cir. 1984) (collecting cases rejecting takings claims where diminution in value ranged from 75 to 90 percent); see also Clayland Farm Enters., LLC v. Talbot County, 987 F.3d 346, 354 (4th Cir. 2021) ("no regulatory taking when presented with diminutions in value of 75 percent and 92.5 percent.")

The second Penn Central factor – investment backed expectations – also weighs against a regulatory taking because Plaintiff has no investment backed expectation in the Noise Code. The Noise Code exists to, inter alia, "reduce the ambient sound level in the city, so as to preserve, protect and promote the public health, safety and welfare, and the peace and quiet of the inhabitants of the city…" (Admin. Code § 24-202) and not to financially enrich Plaintiff. Indeed, Plaintiff's testimony at the hearing on LL16 (Exhibit "A") spoke not about his lost income but rather the impact that capping payments would have on noise pollution – evidencing that his concerns were not with financial rewards (or receiving compensation for his investment of time and money) but rather with decreasing noise. The only mention of financial harm is a reference to how the $10 penalty cap would "condemn to poverty any citizen who wants their noise complaints taken seriously." Id.

The third Penn Central factor – the character of the governmental action – also weighs against a finding of a regulatory taking. "[I]n analyzing the 'character' of the governmental action, courts should focus on the extent to which a regulation was 'enacted solely for the benefit of private parties' as opposed to a legislative desire to serve 'important public interests.'" 74 Pinehurst LLC., 59 F.4th at 568 (quoting Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 485-6 (1987)). LL16 was passed to serve important public interests because the current

"enforcement being done through citizen enforcement [wa]s hurting businesses and [wa]s not helping communities." Exhibit "B" at 65:2-4

### C. Second, the Complaint Fails to State a Cause of Action for a Violation of the Contracts Clause of the United States Constitution or for a Bill of Attainder

The Constitution's Contracts Clause provides that "no state shall pass any law 'impairing the Obligation of Contracts.'" Buffalo Teachers Fedn. v. Tobe, 464 F.3.d 362, 367 (2d Cir. 2006) (quoting U.S. Const. art. 1, § 10). A violation of the Contracts Clause requires "(1) the existence of the alleged contractual obligation; (2) the State's impairment of that obligation; (3) the substantiality of that impairment; and (4) that the impairment was not a reasonable and necessary means of effectuating a legitimate public purpose." Donohue v. Cuomo, 980 F.3d 53, 78 (2d Cir. 2020). Plaintiff cannot establish the first prong because the Noise Code did not create a contract between the City and Plaintiff. "[A]bsent 'an adequate expression of an actual intent' of the State to bind itself, this Court simply will not lightly construe that which is undoubtedly a scheme of public regulation to be, in addition, a private contract to which the State is a party." Natl. R. Passenger Corp. v. Atchison, T. & S. F. R. Co., 470 U.S. 451, 466-7 (1985); see also Detering I ("Petitioners failed to state a viable claim for a constitutional violation. They have no vested property interest in the right to recover a certain amount of fines levied against businesses who violate the Noise Code. Moreover, there is no private contract between respondents and petitioners that could form the basis of a constitutional cause of action.")

Further, to the extent Plaintiff argues that LL16 constitutes a Bill of Attainder, such a claim is barred by *res judicata* as this claim could have been raised in Detering I. *Res judicata* "bars re-litigation if '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" Soules v. Connecticut, 882 F.3d 52, 55 (2d Cir. 2018). "[A] constitutionally proscribed bill of attainder is 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'" Consol. Edison Co. of N.Y., Inc. v. Pataki, 292 F.3d 338, 346 (2d Cir. 2002). Plaintiff already challenged LL16 in Detering I, which was adjudicated on the merits. Plaintiff and City agencies were parties to this proceeding. And the bill of attainder claim asserted here could have been raised in that prior action. See Constantino-Gleason v. N.Y. Unified Ct. Sys., No. 21 Civ. 6327(JLS), 2023 U.S. Dist. LEXIS 105307, at *22-3 (W.D.N.Y. June 16, 2023) ("Plaintiff could have asserted violation(s) of her constitutional rights in the Article 78 proceeding based on these alleged facts.")

### D. Third, This Court Does Not Have Jurisdiction to Hear Plaintiff's Article 78 Challenges

Finally, "[s]tate law does not permit Article 78 proceedings to be brought in federal court." Cartagena v City of NY, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003); but see Dukes v. NYCERS, 361 F. Supp. 3d 358, 369 (S.D.N.Y. 2019) ("When the Court has diversity of citizenship jurisdiction… the Court has subject matter jurisdiction to hear state law claims such as CPLR Article 78 claims."). Since Plaintiff is a New York State resident, and thus diversity jurisdiction does not apply, Plaintiff's Article 78 claims may not be raised in this action. Therefore, Plaintiff's request to have "determinations [where a resolution was reached prior to the effective date of LL16 but where Plaintiff was paid either $5 or $10] set aside and annulled" under CPLR § 7803(3) (Compl. ¶¶ 49, 51) should be dismissed under Fed. R. Civ. P. 12(b)(1).

Respectfully submitted,

Genan F. Zilkha  
Assistant Corporation Counsel

cc: All parties via ECF  
Courtesy copy via email to Failla_NYSDChambers@nysd.uscourts.gov