# EXHIBIT A

Dietmar Detering, PhD
#### 47 ST
Sunnyside NY, 11104

October 11, 2023

**Written testimony to the New York City Council, Committee on Environmental Protection, Resiliency and Waterfronts October 16, 2023 Hearing on Noise Code Enforcement**

Thank you Chair Gennaro and members of the Committee for this opportunity to speak. You have a packed agenda today and I regret that I can only speak to citizen noise complaint matters.

NYC enacted its world-leading noise code in 1972. Knowing that the administration might lack resources and/or interest in enforcing certain sections, your predecessors added a strong and innovative citizen complaint component. Much debate went into determining a fair and reasonable compensation for citizen complainants.

This language is the same as what created the City's highly successful, and widely popular, clean air program: the citizen vehicle idling complaint system.

Puzzlingly, however, the city kept the noise complaint program a secret, for over 50 years. When I inquired with the DEP in April of last year about how to submit citizen noise complaints under section 24-261, the department had neither information, nor forms, nor processes for this. To this day, the DEP publishes no information about citizen noise complaints. It does not, and to my knowledge never did, publish any information about the City's rules against advertising noise pollution, either. Why is that? To fill the void, and to efficiently answer all the requests that I receive about how to participate in the program, I've created a "How To" document that has gone a little viral. But it really should be the DEP providing that information.

076

Please understand: Section 244(b) is not about noise coming from legitimate purposes. If a bar or restaurant is loud in the course of the business then that is not advertising, and the DEP deems such complaints frivolous already. Such complaints will not become a summons, will not reach a respondent, and will not get to OATH. However, if it can be shown that a business is purposefully placing or using a speaker to be heard by the general public then such businesses must be held accountable for such nuisance. Enough with the noise - the city is full of it and the noise code, not just protecting our hearing but also our attention, must be enforced!

Unlike noise from much of construction and traffic, advertising noise only benefits the polluter at the expense of its law-abiding competition in the neighborhood and all of us, New York's denizens. Making polluters stop has no effect on the industry as a hole and all of us win some peace and quiet.

In the past, the DEP had issued some violations against advertising noise, but clearly not enough. This allowed, no, it forced advertising noise to spread like cancer in several neighborhoods, and it created a sense of entitlement among violating businesses.

Fortunately, I have seen results since I've started my work: Roosevelt Avenue and Junction Blvd in my borough of Queens have gotten MUCH quieter. At this time, I also want to applaud Mayor Adams and the NYPD for recently cleaning up other problematic aspects in the same area, namely rampant and out-in-the-open prostitution. Thank you! Should the City Council support, instead of tearing down, the citizen noise complaint program, the future will hold a new equilibrium for our city: very few cases of advertising noise and very few advertising noise complaints.

While the citizen noise complaint program deserves more attention, the narrative appears controlled by pro-noise lobbyists and their noise polluting clients that resist changing their anti-social business models. It's not the number of tickets that irks them, it's the required response, to just turn it off, that they don't like. Suddenly, no more free advertising but instead competing on price and quality of service and products alone - that's not what they want!

Intro 160 is pro-noise because it would give a carte blanche to any business seeking free advertising with noise. All they need to do is place the speaker "inside" and play "music". Section 244(b) wisely is explicit that a speaker can be inside and still cause a violation. This should NOT be changed.

Chair Gennaro's 1194 is pro-noise because it would end the citizen noise complaint program a different way: With the DEP already refusing to pursue any citizen noise complaints, Gennaro's $10 "fair and reasonable" compensation would condemn to poverty any citizen who wants their noise complaints taken seriously: It is complicated and labor-intensive precision work, and keeping yourself available for OATH hearings places you at a serious disadvantage in the job market.

Ladies and gentlemen: The big picture of noise enforcement is a disaster. New Yorkers submit about ¾ of a million noise complaints every year through the 311 system, yet very few violations are ticketed, and noise pollution is getting worse and worse. Finally, a single section of the noise code is being successfully enforced. My work is being welcomed by the communities that had suffered from too much advertising noise in the past, as shown in the attached files of comments (in the original, mostly in Spanish, and translated) on a related TikTok post. What message is this Committee sending by debating ways to end this program?

I urge you to reject intros 160 and 1194. Instead, consider expanding the program to include other sections of the code where citizen complaints can help reduce noise pollution in the city. Demand that the DEP explain to NYC businesses what constitutes advertising noise and that this law is now being enforced. The DEP and also the 311 system must finally inform the citizens about the citizen noise complaint program and not hide it anymore. The department should also pursue all citizen noise complaints itself, just like it pursues citizen air complaints, and not leave them all to the citizen complainants as it does now.

Dietmar Detering, PhD  
Sunnyside NY, 11104

October 19, 2023

**Additional Written testimony to the New York City Council, Committee on Environmental Protection, Resiliency and Waterfronts October 16, 2023 Hearing on Noise Code Enforcement**

I feel compelled, in light of DEP's claims at the hearing, to make a few additional remarks in addition to my previously submitted testimony, in writing and via zoom. First, a few key facts:

1) Advertising noise reduces property values and is harmful to non-noisy businesses and the quality of life and health of New Yorkers.

2) Any noise that purposefully attracts our attention to some commercial activity while we are about going about our own business, like walking to work, school, or errands, is advertising noise.

3) Much of Monday's hearing focused on bars. Because they have a good lobby. Should this lobby succeed, our streets will be filled with more commercial noise than ever before. Not just from bars and restaurants, but stores of all kinds. Many weed shops and souvenir and electronics stores have been particularly blatant noise polluters.

4) The City Council made advertising noise illegal in the 1930 and added the citizen complaint system in 1972. This survived many reforms, but it was apparently never promoted by the City.[1]

5) The DEP does not explain advertising noise laws anywhere, to my knowledge.

6) The DEP does not mention or explain the noise citizen complaint program anywhere, to my knowledge.

7) The only reason there are other citizen noise complainants is because the two who started this are trying to recruit others to help address illegal advertising noise. They

---

[1] See attached extract from the 1930 noise commission report, provided to me by Charles Sturcken in response to my email to him, also attached. My email to him was in response to his remark made to me during a meeting of the DEP's air complaint working group, of which I am a member.

prepared a how-to, and the complaint form is being made publicly available.[2] The DEP, on the other hand, hides the citizen noise complaint program, providing no publicly available information.

8) The City's 311 system does not have a category for an advertising noise complaint, despite this activity being illegal since about 1930 in New York City.

9) The DEP and the NYPD have failed to enforce the prohibition against advertising noise, leading to a cancer-like spreading of this nuisance in some neighborhoods, where it in some cases, like on Roosevelt Avenue in April of last year, reached ear-splitting levels, way beyond just inducing stress. DEP issued some tickets here and there, but did not change behavior. One cannot expect the DEP to pick up the work should the citizen noise complaint program be discontinued.

10) Testimony from DEP and pro-noise lobbyists and noise polluters created the impression that "thousands" of businesses are being "terrorized" with "dozens" of summonses each. This is an exaggeration that cannot be true - the math doesn't add up. Using my own data[3], I see 1,381 businesses with at least one 244(b) violation since 2020. 120 businesses have received more than 10 violations. Only 8 businesses have received "dozens" (24 or more) violations. They are:

- Celtic Pub Restaurant

- Hard Rock Hotel New York

- Merrion Row Hotel and Public House

- Nature Republic Flushing Inc

- NY Cell Spot Inc (3805 Junction Boulevard, Queens)

- Quality Bistro

- Romantic Depot (Sunnyside)

---

[2] Via a virally distributed google doc so far, but soon at http://nycquiet.org
[3] Current as of 10/10/2023 and excluding dismissals

- Virgil's Real BBQ Times Square

These eight should be showcased as scofflaws that persistently terrorize(d) the public with their profit interest. They are not "victims" of citizen complaints. Merrion Row, for example, was recently found in violation by the Appeals Unit of OATH - yet even afterwards it continues to blast its music directly to the sidewalk from two speakers in its awning, for NO REASON other than to draw attention to its happy hour sign board and menu. CELTIC PUB, despite its many summonses, continues to host live music inside its establishment, and blast that same music at ear-splitting levels to the sidewalk in front of its establishment from an outdoor speaker. These businesses' own victims are the tens of thousands of law-abiding New Yorkers asked to suffer the physical and psychological consequences of their shameless noise pollution.

Citizens have been very active over the last 18 months or so in the fight against commercial noise, and there has been significant success. In a city rife with vehicle engine and horn noise, construction noise, emergency sirens, helicopters, ice cream truck jingles, screeching subway cars, and countless other sources of unhealthy noise, commercial noise complaints provide a small but crucial way for citizens to improve the environment they live in—and that law-abiding businesses operate in. But citizens cannot do this (well) without the DEP playing its part. Right when I started submitting complaints in April 2022 the DEP could have started thinking about how to handle this. In emails to them, I alerted them of some of the risks that we are seeing today as problems, but the DEP did nothing other than making my life miserable by forcing me to pursue all the complaints myself, knowing very well that I would not want to do so, and running the clock in order to make sure additional time would pass between my complaint and me serving the summonses. What for? Why didn't the DEP send some inspectors around the known hotspots with flyers, saying a) what is illegal advertising noise and b) there are now citizen complainants with a powerful and potentially expensive tool in hand. The DEP could also

have issued summonses directly, on the spot, and talked to the violating businesses. Violators are not hard to find—you can often hear them from a block away. Or at least call up businesses when the DEP receives a complaint? Why would DEP make the businesses wait (and carry on with the noise pollution) to be notified until after DEP approves the summons for citizen prosecution and ultimately prepares and makes a summons form available to the citizen?

In their testimony the DEP did not mince words judging me and other citizen complainants. I believe this gives me the right to ask in return: Where is the leadership at the DEP? What is the DEP's accomplishment in all this other than having hidden this part of the noise code for 50 years (both the rules against advertising noise AND the citizen complaint component) and having first-hand knowledge of what was going on yet not doing a single thing that would have made both noise enforcement more effective AND softened the blow to some businesses that were un- or misinformed about the law and the citizen complaint program? Instead, all we get is lazy grandstanding and name calling in the testimony presented by the DEP's Angela Licata.[4]

The DEP shows that the very department charged with enforcement of the law against advertising noise does not even understand what the problem is. At length, Ms. Licata laments about issues they have with some participant(s) in the citizen air complaint (idling) program. To my knowledge, these issues have NOTHING to do with noise complaints, and they have NOTHING to do with the "two individuals" responsible for spearheading the program. Yet, her testimony appears aimed to create the opposite impression and must be rejected as slanderous by this council.

---

[4] Parts of DEP's testimony are outrageous. I reject the characterization of my motivations and the suggestions of improper, disrespectful, or illegal conduct in the strongest terms. DEP needs to provide proof for the accusations and their linking to my person, and DEP should have provided me with an opportunity to respond before going public with it. They claim to have been in conversation with business groups about citizen noise complaints, but they had not one single conversation about this with citizen noise complainants.

Licata further reads out loud: "To make money more easily, a small number of people abused this enforcement option and have been targeting, harassing several businesses." The DEP has never met with any of us and asked us for our motivation. Rather, they have simply written to us and told us most of our documented noise complaints are "GOOD." How dare the DEP accuse us publicly of mere greed? I have engaged with other members of the public and created a guide for the pursuit of noise complaints specifically because DEP has utterly failed in its own mandate to do so—the lack of diverse complaints is squarely on them. The real difference between the ease of recording noise violations and that of idling violations is not the length of the video. These businesses do not leave music on from their outdoor and outdoor-facing speakers for seconds, but rather for hours. The difference is that NO ONE has been enforcing section 24-244(b), while idling enforcement since 2019 has been showing real results due to the participation of many more citizens, and due to public resources being spent to educate and enable those idling complaints. At first, as has been the case with noise, very few people were pursuing idling complaints, then the numbers grew as citizens helped each other and the DEP followed its legislative mandate to create a submission system. The DEP's "hiding the ball" on noise and failure to enforce the law is responsible for businesses blasting away, abusing and terrorizing passersby and their neighbors on the one hand, but being sitting ducks for citizen enforcers on the other hand. By keeping quiet about the relevant sections of the noise code, DEP is not helping *anyone*!

DEP's representatives at this hearing of October 16, 2023, displayed a disquieting ignorance about advertising noise and how to effectively police it. Licata said (extracted from a transcript):

> As you can see on the map that we provided in the testimony that these citizens have been targeting specific areas of Queens and Manhattan. They're mostly commercial areas where they can walk down the street and record sound for multiple businesses in just a few minutes.

Where else would one expect commercial noise violations but in "commercial areas"? And does the DEP not realize that citizen enforcers may live in or near such "commercial areas"? Further, as explained elsewhere, advertising noise spreads like cancer through commercial and mixed-use neighborhoods. Those who refrain from polluting are not only being hurt by dropping property values and the general loss of appeal of the neighborhood but also by noisy businesses siphoning away walk-in customers—or in some cases dissuading them from visiting any business in the immediate vicinity. Without enforcement, similar businesses may find themselves compelled to put a speaker out in a "race to the noisiest," or else simply suffer the effects of noisy neighbors. Who wants to operate—or patronize—a yoga studio or daycare next to a cell phone shop that pumps out early 2000s electronic dance music throughout the day? It is surprising that there are so many honest businesses resisting this pressure, sticking instead to competing by offering high quality products and services at fair prices. However, the DEP makes it sound like "all businesses" or "thousands" of businesses are being hurt by the tickets when it really is only a small number of bad apples among a largely law-abiding business community.[5]

> The enforcement being done through citizen enforcement is hurting businesses and is not helping communities.

Here, the DEP shows their flawed view that law enforcement is hurting those that are being brought into compliance (because violators are forced to pay fines for their infractions). Focusing on this aspect of law enforcement turns violators into victims, and enforcers into violators, and ignores the positive contributions of the vast majority of law-abiding businesses and the positive benefit to all New Yorkers of quiet. This explains the total failure of DEP to enforce the City's rules against advertising noise. DEP claims:

---

[5] Naturally, only businesses that received noise violations showed up to testify in support of intros 160 and 1194. Their law-abiding and suffering neighbors were not invited by the "Hospitality Alliance" to testify. Only those who received tickets. This large majority of law-abiding and neighborhood-friendly businesses need to be praised and encouraged, but the City Council's and the DEP's focus on presenting noise polluters as victims instead adds insult to injury to the non-polluting neighbors.

> Citizen enforcement is happening in areas where we do not receive 311 noise complaints. No one is complaining about noise from Times Square in the middle of the day, but more than 1000 citizen complaint reports have been focused there.

The City's own 311 system *doesn't even offer a category for advertising noise*! And the noise of Times Square has caused "real New Yorkers," who know about the 311 system and are invested in using it, to simply avoid Times Square like the plague. The DEP's lack of enforcement created a sense even among some violators that their noise pollution was tacitly condoned or totally legal, as shown in some hearing testimony at OATH. With the DEP's failure to even publish information about the illegality of advertising noise, let alone the citizen noise complaint option, how would the public even know there is anything they are allowed to complain about? After all, advertising noise shows up in neighborhoods with multiple violators doing this all in the open with NYPD officers doing nothing about it, even when explicitly asked by citizens. To top it off, the worst violations have taken and still are taking place in underserved immigrant and low-income communities. Holding the lack of engagement of these communities with the (rather useless) 311 system against them, in effect denying them even an interest in a protected quality of life, is beyond the pale. DEP continues:

> Even if this bill weren't acted as it is currently drafted, businesses could still receive many summonses and many summonses at once, having to take the time to defend themselves at an adjudication hearing and having to pay a significant fine.
>
> The administration therefore wants to enact holistic reform legislation that would establish a fixed monetary payment for citizen enforcers, as this bill does, but would also ensure the businesses receive a summons in a timely manner and do not receive too many at once.

The DEP could have been doing much about this phenomenon by itself, by quickly issuing summonses based on valid complaints, substantially reducing the overall processing time, or at least reaching out to affected businesses with a phone call or a generic "heads up" letter to the named respondent. Better yet: With a suspected or emerging "problem" in select commercial

086

areas, visit the neighborhood and inform likely subjects of citizen noise complaints. Issue some summonses right on the spot, while you are at it! But no: DEP did everything it could to have this program hit the wall of negative perception in the business community - and now blames citizens for it. It is the duty of the DEP to improve enforcement practices, yet they did not even seek a word with citizen complainants about emergent problems. Having failed at their job, DEP is now asking City Council to gut advertising noise enforcement altogether, saying:

> Limit citizen noise enforcement to overnight hours when these noise violations have a greater or negative impact.

Again, the DEP is showing a total lack of understanding what advertising noise even is: Speakers are put out in order to reach the attention of passersby, typically in the daytime when sidewalks are packed with many people (that is, many advertising targets). The damage to New Yorkers is in the psychologically and physically unhealthy overstimulation of our senses, the theft of our attention and focus, and the damage to other businesses that have to coexist with noisy neighbors. This is NOT general loud noise that always prevents people from sleeping which the DEP is supposed to enforce under other laws and which is unfortunately outside of the scope of citizen complaints under section 24-261. DEP goes on:

> Create a cure mechanism so that businesses can work with the DEP to resolve an issue, avoiding the need to appear at a hearing and eliminating any potential fine.

Content not only with cutting the award for citizen noise reports to an insulting amount, limiting their enforcement hours where enforcement would miss advertising noise altogether (are cell phone shops open at 1 AM?), and adding additional unspecified restrictions, the DEP further wants to protect violators by offering them a cure. However, speakers are not being used for advertising by accident and not knowing the law is not a defense! A cure means no deterrent; businesses will break the law until they are caught (and, as we have seen with mitigation by OATH policy, break it again after they lock in their $0 penalty). Further, the City's sidewalk cafe

rules and Open Restaurant rules explicitly prohibit amplified sound. What good would such a cure option do other than turning advertising noise enforcement into more of a joke than it already would be in the absence of an effective citizen complaint system? The obvious goal of the DEP is to discourage citizen enforcement, and thus to make the advertising noise enforcement disappear altogether, without saying so:

- The department will not magically ramp up its so far almost non-existing enforcement
- Citizens will be deprived of incentives to participate
- Citizen enforcement will be limited to hours where the problem barely exists and where citizens are unlikely to even be awake
- By offering a protection against multiple summonses and a cure option, the DEP wants to deprive the law of both its punishment AND its deterrence power, rendering it neutered and meaningless, and contradicting the clear purpose and extensively documented deliberation behind City Council's original 1972 legislation.

The DEP's testimony is speaking in clear language: "Noise polluters, blast away! Your neighborhoods are there to serve the loudest of you, and your neighbors better keep up or put up! Citizen enforcers are morally corrupt individuals and add no value but cause a lot of harm to our dear noise polluters and must be fought to the fullest extent of the City Council's abilities, but please without damaging the appearance of NYC having a really good noise code." The apparent motto of the DEP? "Speak loudly and carry a short stick." Is this what NYC stands for?

Dietmar Detering, Queens, NY