

July 8, 2025

Hon. Katherine Polk Failla
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

    Re:    Case No. 25-cv-2100(KPF), <u>Detering v. City of New York</u>

Dear Judge Failla:

    My firm, with co-counsel, represents Plaintiff in the case named above. Pursuant to the Court's Individual Practices, I write to respond to Defendant's pre-motion letter under the Court's Rule 4(A).

    To begin, Plaintiff intends to amend — and is hopeful that may clear up or at least crystallize some of the parties' actual disputes here. Given that this would be Plaintiff's amendment as of right, and because I have several major briefing and other major filing deadlines in the coming few weeks, Plaintiff asks for 45 days for that amendment.

    Among other things, Plaintiff intends to clarify the contours of his retroactivity Due Process claim — which was previously not broken out to stand alone (and therefore, not addressed in Defendant's letter). In short, nothing in the law itself, nor the decision in *Detering I* for that matter, ever suggested the law would apply the way challenged here:[1] to summonses heard" *before* "the operative date" of LL16. ECF No. 1 ¶ 19, citing *Detering I*, Slip Op. at *6.

    With that said, pursuant to the Court's Rules, Plaintiff's position on the arguments raised in Defendant's letter is below.

    *First*, Defendant is wrong to suggest that the Taking here is not a "complete elimination of value." ECF No. 16 at 2, *citing Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). As Defendants acknowledge, the limit of the non-categorical taking doctrine appears to be somewhere around 90% to 92.5%. *Id.*, *citing Park Ave. Tower Assoc. v. New York*, 746 F.2d 135, 139 (2d Cir. 1984) (75 to 90 percent) and *Clayland Farm Enters., LLC v. Talbot County*, 987 F.3d 346, 354 (4th Cir. 2021) (75 to 92.5 percent). But the reduction here from the pre-LL16 penalty of 50% of penalties between

---

[1] To that end, that is in part why "Plaintiff's testimony at the hearing on LL16 … spoke not about his lost income but rather the impact that capping payments would have on noise pollution." ECF No. 16 at 2. Putting aside that the testimony within limited time offered in a hearing on the law would necessarily be geared at persuasion, not some sort of binding, exhaustive statement about challenges that might exist to the law, the basic fact is that until the City suddenly changed course from its arguments in *Detering I*, everyone anticipated that the City would only argue for "appli[ciation of LL16] **only to summonses heard after the operative date**." ECF No. 1 ¶ 19, citing *Detering I*, Slip Op. at *6 (emphasis added).



$440 and $5,250 to either $5 or $10 is a reduction of up to 99.6%.  *See, e.g.,* ECF No. 2 at 5, Summons No. 0216402762 (penalty of $5,250 paid to City); ECF No. 2, generally (697 penalties of $5,250).

So, start with the fact that the cases Defendant cites are about "the legion of cases that have upheld regulations which severely diminished the value *of commercial property*" (*Park Ave*, 746 F2d at 139 (emphasis added) where different concerns apply (such as *how* valuation is calculated) than when the alleged taking is of money itself, because "such programs are, as noted above, mere incidents of property ownership." *Santini v Connecticut Hazardous Waste Mgt. Serv.*, 342 F3d 118, 132 (2d Cir 2003). By contrast, takings of *funds* occur without reference to how much money the government takes as a percent — and instead is "measured by the owner's pecuniary loss." *Brown v Legal Found.*, 538 US 216, 240 (2003).  Again, the facts here are that the government *has* collected the full penalties, and has passed a retroactive law saying it gets to keep as much as 99.6% of the share the law promised to Plaintiff.  Defendants do not offer any explanation for why the real property taking cases would apply here — and it is hard to see why they would, since they focus specifically on how hard to measure a deprivation of *value* in property would be, when the whole property is left untaken.  Here, it's not exactly difficult to measure effect the retroactive taking.

Moreover, even in the real estate context,[2] the Supreme Court has been clear that a property owner who "has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." *Lucas v S. Carolina Coastal Council*, 505 US 1003, 1019 (1992) (emphasis in original).  *Lucas* concerned a property that regulations made economically useless — doomed to lie fallow.  Here too, LL16 deprives Plaintiff of any economic use of his labor:  It pays him pennies on the hour, for thousands of hours of work, and leaves him in a place where he will simply leave his work.  Again, the analogy isn't perfect, but the similarity to the "all economically beneficial use" cases seems far stronger than to regulatory diminution in value.

*Second*, Defendants' Bill of Attainder and Contracts clause arguments seem to be based on the premise that *Detering I* addressed *these* summonses.  However, the summonses in *Detering I* were explicitly addressing — and disclaimed by the City to be — "appli[ciation of LL16] **only to summonses heard after the operative date**."  ECF No. 1 ¶ 19, citing *Detering I*, Slip Op. at *6 (emphasis added).  So, neither the challenge here, nor the summonses at issue, were resolved in *Detering I* — and if they were, then the City is violating the reasoning, and perhaps also the letter, of the Order in *Detering I*.[3]

*Finally,* on jurisdiction over the state law claim, as Defendant acknowledges, some courts have directly held that "the Court has subject matter jurisdiction to hear state law claims such as CPLR Article 78 claims" when it otherwise has jurisdiction (or at least, for diversity jurisdiction).  ECF No.

---

[2] There is also some question of whether, even looking to real estate, the appropriate comparison would not be regulations that diminish economic uses, but instead "permanent physical occupation" of land, given the nature of LL16.  *Lucas v S. Carolina Coastal Council*, 505 US 1003, 1028 (1992).

[3] And, indeed, Defendant is likely equitably estopped from arguing that the retroactivity here is *not* the impermissible kind, having argued to Judge Bluth and had her adopt the reasoning that LL16 "applies only to summonses heard after the operative date" of LL16.  That is, if it *did not* only apply that way, the whole law might have been invalid as impermissibly retroactive.

COHEN&GREEN

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com

16 at 3, *quoting Dukes v. NYCERS*, 361 F. Supp. 3d 358, 369 (S.D.N.Y. 2019). *See also, e.g., Cartagena v City of NY*, 345 F Supp 2d 414, 426 (SDNY 2004) (exercising supplemental jurisdiction over an Article 78-type claim where "the Court had subject matter jurisdiction over the action because Cartagena had asserted a federal claim under Title VII in her complaint").[4] That is not to suggest cases only go that direction. Instead, there are many disagreements among courts on this issue, so briefing it will likely be necessary — unless the parties want to stipulate for efficiency to resolve all claims in a single case.

As ever, I thank the Court for its time and consideration.

Respectfully submitted,

/s/

J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

[4] The parties had ultimately consented to jurisdiction in *Cartagena*. That is a fact the Court there places some significance on, but the basic rule is that parties cannot consent to give the Court jurisdiction it lacks. So, perhaps "jurisdiction" over Article 78-type claims sounds more in a kind of discretionary, abstention-type register. But if so, the modern trend away from abstention may counsel against relying too heavily on older cases. Either way, as noted above, this is a complex issue that requires briefing.