**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- X

DIETMAR DETERING,

              Plaintiff,

    - against -

THE CITY OF NEW YORK,

           Defendant.

------------------------------------------------------------- X

Case No.: 25-cv-2100(KPF)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

**COHEN&GREEN P.L.L.C.**
J. Remy Green
1639 Centre St., Suite 216
Ridgewood, New York 11385
t:  (929) 888-9480

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682

December 15, 2025

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. ii

FACTUAL BACKGROUND ........................................................................................... 1

ARGUMENT .................................................................................................................... 2

I.     THE CLAIMS AT ISSUE ARE RIPE ................................................................. 2

II.    THE CITY'S ISSUE PRECLUSION ARGUMENT WAS DISCLAIMED BY THE CITY .. 4

III.   PLAINTIFF HAS STATED A TAKINGS CLAUSE CLAIM ............................................ 6

IV.    PLAINTIFF HAS STATED A BILL OF ATTAINDER CLAIM ....................................... 12

V.     Plaintiff HAS STATED A "STATE-LAW QUASI- CONTRACT/QUANTUM MERUIT/UNJUST ENRICHMENT" CLAIM IN THE ALTERNATIVE TO CONTRACT CLAIMS. ......................................................................................................... 14

   A.   Defendant cites inapposite cases to claim that the lack of a contract means there can be no recovery in quasi-contract, which misstates the law. ............................................. 15

   B.   Defendant's argument that Plaintiff does not state the value of services he is owed is belied by the contents of the Amended Complaint. ................................................. 16

VI.    PLAINTIFF HAS STATED A STATE-LAW "ARTICLE 78" CLAIM ............................ 17

   A.   This Court does not need to abstain from reaching the state law Article 78 claim ........... 17

   B.   Defendant is wrong that the statute of limitations has run on the summonses at issue. ... 17

VII.   PLAINTIFF HAS STATED A RETROACTIVITY CLAIM ............................................. 19

   A.   The City is judicially estopped from drawing a new retroactivity line and LL16 "does not implicate [any] prior decision that had already been rendered." ............................... 19

   B.   Application of LL16 to summonses already heard is perniciously retroactive anyway. .. 21

CONCLUSION ................................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*216 E. 29th St. Trust v City of NY*,
2025 US Dist LEXIS 15267 (SDNY Jan. 28, 2025, No. 24-cv-00595 (ER)) ........................16

*ACORN v. United States*,
662 F Supp 2d 285 (EDNY 2009) ........................................................................................11

*Alliance of Am. Insurers v Chu*,
77 NY2d 573 (1991) ........................................................................................................7, 8

*Am. Econ. Ins. Co. v. State*,
87 N.E.3d 126 (N.Y. 2017)..........................................................................................6, 7, 8

*Cardenas v NY-Presbyterian Med. Group/Queens*,
2025 US Dist LEXIS 173780 (EDNY Sep. 5, 2025)...........................................................4, 20

*Clayland Farm Enters., LLC v. Talbot County*,
987 F.3d 346 (4th Cir. 2021) ...............................................................................................9

*Data Gen. Corp. v Johnson*,
78 F3d 1556 (Fed Cir 1996)................................................................................................19

*Davis v Wakelee*,
156 US 680 (1895).............................................................................................................18

*Entergy Nuclear Vermont Yankee, LLC v Shumlin*,
733 F3d 393 (2d Cir 2013)..................................................................................................3

*Greater Chautauqua Fed. Credit Union v Marks*,
2023 US Dist LEXIS 57087 (SDNY Mar. 31, 2023) .....................................................10, 11

*Matter of Hennel*,
29 NY3d 487 (2017) ....................................................................................................6, 10

*JFK Holding, Tesser v Allboro Equip. Co.*,
302 AD2d 589 (2d Dept 2003) .....................................................................................14, 15

*Jobpath Partners, LLC v City of NY*,
2025 US Dist LEXIS 199606 (SDNY Oct. 8, 2025) ............................................................15

*Keiler v Harlequin Enters.*,
751 F3d 64 (2d Cir 2014)....................................................................................................12

*Knapp v CONRAIL*,
171 Misc 2d 597 (Sup Ct, Albany County 1997) ..................................................20

*Landgraf v Usi Film Prods.*,
511 US 244 (1994) ..............................................................................................20, 21

*Lingle v. Chevron U.S.A. Inc.*,
544 U.S. 528 (2005) ..................................................................................................9

*New Hampshire v Maine*,
532 US 742 (2001) ..................................................................................................19

*Park Ave. Tower Assoc. v. New York*,
746 F.2d 135 (2d Cir. 1984) ......................................................................................9

*Paro Mgt. Co. v Willis of New Jersey, Inc.*,
2025 U.S. App. LEXIS 29289 (2d Cir Nov. 5, 2025) ..............................................4

*Penn Central Transportation Co. v. New York City*,
438 U.S. 104 ........................................................................................................9, 10

*Principle Homecare, LLC v McDonald*,
2025 U.S. App. LEXIS 27360 (2d Cir Oct. 21, 2025, No. 25-466) ..........................9

*Matter of Regina Metro. Co., LLC v NY State Div. of Hous. & Community
Renewal*,
35 NY3d 332 (2020) ............................................................................................20, 21

*S. T. Grand, Inc. v. City of New York*,
298 N.E.2d 105 (N.Y. 1973) and *JFK* ....................................................................14

*S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Building 1 Hous. Dev. Fund Co.*,
608 F2d 28 (2d Cir 1979) ........................................................................................13

*Selective Serv. Sys. v Minnesota Pub. Interest Research Group*,
468 US 841 (1984) ..................................................................................................11

*Walton v NY State Dept. of Corr. Servs.*,
8 NY3d 186 (2007) ..................................................................................................17

**Other Authorities**

John Passmore, "When the Mob Infiltrated City Government," WNYC, Feb. 24,
20216, at https://www.wnyc.org/story/when-mob-infiltrated-city-government ....................14

U.S. Const., amend. V ............................................................................................6, 8

Plaintiff DIETMAR DETERING by his attorneys Cohen Green PLLC and Gideon Orion Oliver , submits this Memorandum of Law in opposition to Defendant City's Motion to Dismiss the First Amended Complaint ("FAC").

## FACTUAL BACKGROUND

As set forth in the FAC, Plaintiff is a New Yorker who participated in New York City's citizen reporting provision in its Noise Code. FAC ¶ 10. Plaintiff provided Defendant with significant services, and earned Defendant massive amounts in revenue — that the Defendant in fact collected. FAC ¶ 11. The citizen reporting program in the City's Noise Code worked as follows:

> a. A citizen may file a complaint for violations of the noise code with the Department of Environmental Protection ("DEP"), accompanied by evidence supporting that complaint.
> b. If the DEP deems the complaint meritorious, it may either pursue the complaint itself, serving a notice of violation, or it may sit back and allow the complainant to self-prosecute (if the complainant wants to).
> c. Either way, the complaint results in a summons before OATH, where it proceeds much like any case in any tribunal:  Alleged noise polluters and Petitioner can attend a hearing, or the noise polluter can admit the violation; a party may appeal the result of a hearing, noise polluters default and face default judgments, and so on.
> d.  If DEP pursues and prevails on a complaint, the complaining citizen receives 25% of the proceeds (and the City keeps 75%); if the complaining citizen self prosecutes, he or she receives 50% (and the City still keeps 50%).

FAC ¶ 12.

The Noise Code – before the 2024 amendment – invited citizens to file complaints in exchange for "fair and reasonable compensation" of 25% or 50% of the paid fines. FAC ¶ 15; 107; N.Y.C. Admin. C. § 24-261(d)-(e) *prior to 2024 amendment* (hereinafter "pre-amendment § 24-261(d)-(e)").

On December 6, 2023, the City Council changed the citizen reporting provision in the Noise Code, that had existed for fifty years without amendment, by passing Intro 1194-A or Local Law 16 of 2024 ("LL16"). FAC ¶ 13. LL16 changed the law to cap citizen awards for

certain kinds of complaints from 25%-50% of the City's proceeds to $5 or $10 total, and the new law capped the penalties for certain violations at $50. FAC ¶ 14-16. The regulatory change went into effect on January 29, 2024. FAC ¶ 18.

At issue in this matter is the disposition of a set of summonses Plaintiff filed with OATH before the regulatory change went into effect, when Plaintiff was relying on the fifty-year-standing citizen enforcement program's promise of just compensation for work enforcing the Noise Code. FAC ¶ 7-8; 19; Schedule A to FAC. The advocates of the law claimed the law was meant to "reduce the volume of summonses" under the relevant Noise Code provision and decrease the incentive for citizens to report noise pollution. FAC ¶ 50. However, retroactive application of the law does not serve those ends – there is a fine already imposed (whether by hearing or default), and all relevant reporting and/or enforcement actions taken by Petitioner already occurred before LL16's effective date. FAC ¶ 51-52. This is especially true as the City is collecting the original full penalty for the Schedule A Summonses, of $440 to $5,250 per summons. FAC ¶ 53. Additionally, the legislative history of the law makes specific reference to Plaintiff's property interests under the original law – including a legislator's testimony, a DEP official's testimony, a police officer's targeted criticism, and a DEP official's statement to press. FAC ¶¶ 75-81.

## ARGUMENT

### I.    THE CLAIMS AT ISSUE ARE RIPE

Defendant begins its motion to dismiss by saying that the claims are not ripe, because — while penalties have been assessed — for a subset of the summonses, penalties have not yet been *collected*.  ECF No. 23, Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Complaint ("DMOL") at 3-4.  For this, Defendants cite only scant, general authority.

First, this argument fails by misconstruing the claims here. Plaintiff claims that the City's *policy* on how it enforces LL16 is unconstitutional and unlawful. The "'basic rationale' of the ripeness doctrine is to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Entergy Nuclear Vermont Yankee, LLC v Shumlin*, 733 F3d 393, 429 (2d Cir 2013). But here, Defendant's policy **has** been "formalized and its effects felt in a concrete way by the challenging part[y]" (*id.*), and Defendant does not serious argue otherwise.

Instead, Defendant attempts to reframe the Court as powerless to enjoin the policy itself, and suggest that the Court may only address specific adjudications — as if this Court were limited in the way that state courts handling Article 78 disputes are. But there is no such limitation, and the claims here include injunctive Due Process claims — that is, claims about what process must take place **before** Defendant reaches a final decision as to any specific summons. Defendant does not dispute (1) it will treat every summons at issue identically, (2) that its policy in that regard is well-alleged and final, and (3) that the policy has caused an injury in fact to Plaintiff. So to claim there is a ripeness concern is misguided.

Beyond that, Defendants' arguments, even on their own terms, do not address at least 47 of the summonses. For the remainder, Plaintiff's **claims** are not — as Defendants suggest — contingent on future events. To be sure, for a subset of those, there may and likely will be remedies questions based on the status of the case: Whether Defendants' conduct has precluded recovery such that damages are appropriate even without the City's recovery, whether the remedies are purely equitable (and accordingly, the remedy is disgorgement or something

similar), and the like.  But there is no question — and Defendants raise none — that Defendants are applying LL16 in a retroactive way, to all summonses at issue, that Defendants *will* reduce any penalties collected, and so on.

In this way, Defendants' argument that Plaintiff's claims are not ripe are akin to the claims that any lien is not ripe — and the kind of argument Courts routinely reject.  For example, in *Cardenas v NY-Presbyterian Med. Group/Queens*, 2025 US Dist LEXIS 173780, at *5, n 1 (EDNY Sep. 5, 2025), Judge Eshkenazi rejected the argument that a motion for a "charging lien is 'speculative and not yet enforceable' because 'no recovery has occurred'" because the lien itself was still enforceable.  Likewise, here, Plaintiff's claims — at least for those summonses where "no recovery has occurred" yet (*id*.) — are (at least in part) for an injunction akin to a charging lien.

Last, the practical effect of the City's request for this kind of abstention[1] is one that will multiply proceedings.  Plaintiff has at least 1,000 summonses to which the City will apply LL16 *after* a hearing.  And recall that some of the claims here have a mere four month statute of limitations.  The City's argument will result in Plaintiff needing to file new cases essentially every four months for the foreseeable future, as more summonses become ripe.  As far as any exercise of discretion involved, it would obviously be far preferable for courts to hear this dispute once, and only once.

## II.    THE CITY'S ISSUE PRECLUSION ARGUMENT WAS DISCLAIMED BY THE CITY.

---

[1] Zooming out, ripeness's status as a doctrine that involves significant exercise of discretion is something that has been cabined or called into question significantly in recent years.  *See, e.g., Paro Mgt. Co. v Willis of New Jersey, Inc*., 2025 U.S. App. LEXIS 29289, at *3 (2d Cir Nov. 5, 2025).  That is because, following a more free-wheeling period of various kinds of abstention, the Supreme Court has emphasized that courts should all but never be abstaining when jurisdiction exists.

While the City argues here that the *Detering I* court rejected arguments here, the *Detering I* court was clear it was only considering — as framed by the City — that LL16 "applies **only** to summonses heard after the operative date." FAC ¶¶ 66-67 (emphasis added), *quoting Detering I.*[2]

At oral argument in the *Detering I* appeal, the City explicitly disclaimed any preclusive effect on the summonses here, saying:

> "I want to clarify that the OATH cases at issue here ... are the cases for which summonses had been issued, but no hearing had yet been held."

Oral Argument, *Detering I,* at 2:27:00-2:28:00.[3] If that were not clear enough on its own, that "clarif[ication]" came after **explicit** discussion of this case. Counsel for Detering discussed this case, saying, "In Detering II ... the City is now saying the decision below covers not just what it said ... that legislation applies to summonses *heard* after the operative date, the City is taking the decision and saying it applies to all summonses including those heard after the effective date ... they can't talk out of both sides of their mouth this way." *Id.* at 2:21:30-2:22:30. The City cannot now walk back this concession, both as a matter of fundamental fairness and judicial estoppel (*discussed* more specifically in Point VII(A) below).

*Detering I* simply did not address the summonses here, because in that case, **everyone** assumed the City would pay out on summonses heard before LL16's effective date: None of the City's Counsel, the Court, or Detering's counsel even conceived of the possibility that the City would apply LL16 to summonses heard before the law became effective, presumably because of the facial retroactivity concerns around such application.

---

[2] The Appellate Court's reasoning *does* preclude the pure contract claims (but not the quasi-contract claims), and accordingly, Plaintiff agrees the Court should dismiss those claims.
[3] *Available online at*  https://cmi.nycourts.gov/vod/WowzaPlayer/AD1/AD1_Archive2025_Oct30_13-59-12.mp4

To then say there was a "'full and fair opportunity' to litigate" the issues that that pertain to summonses heard **before** the operative date of LL16 is thus wrong.  The City benefitted in *Detering I* from not having to address whether the fact that hearings had already happened changed the analysis — and, of course, that **does** change the analysis.  That is the entire reason the City was emphatic on this point:  "Int. 1194-A does not implicate [any] prior decision that had already been rendered." *Detering I*, NYSCEF Doc. No. 137 at 10.  The City cannot now claim "Int. 1194-A **does** []implicate prior decision[s] that had already been rendered," *Detering I*, NYSCEF Doc. No. 137 at 10, citing *Detering I*, given that the City said the literal opposite there.

### III.    PLAINTIFF HAS STATED A TAKINGS CLAUSE CLAIM

Defendant's statutory change was a taking under the Fifth Amendment:  it took the value of Plaintiff' significant work, done in reliance on the government's promise of "fair and reasonable compensation" (FAC ¶ 15; 107; pre-amendment § 24-261(d)-(e)) without any "just compensation."   U.S. Const., amend. V.

#### A.  Plaintiff had a vested property interest in the summons at issue.

Defendant does not dispute that Plaintiff was reasonable in relying on the decades-old promise of "fair and reasonable compensation" for work in helping enforce the Noise Code.  Pre-amendment N.Y.C. Admin. C. § 24-261(d)-(e).  *Cf., e.g.*, *Matter of Hennel*, 29 NY3d 487, 493 (2017) (setting out the elements of promissory estoppel).  And, of course, the reasonably expected effect of making the promise in the original, pre-amendment § 24-261 was precisely to induce the work Plaintiff undertook to file complaints and/or summonses at issue, and prosecute hearings before OATH, all before LL16's effective date. Defendant's motion instead focuses on whether Plaintiff had a vested property interest in the summonses at issue that is sufficient to state a Takings claim. DMOL at 9. Defendant's argument that Plaintiff has no vested property

interest in the summonses at issue fails because the language in pre-amendment § 24-261(d)-(e) granted a vested property interest in "fair and reasonable compensation" for work fully performed before the amendment.

Defendants are wrong in their assertion that the pre-amendment Noise Code did not grant a vested property interest. DMOL at 8-12. Defendant cites *Am. Econ. Ins. Co. v. State*, 87 N.E.3d 126, 140 (N.Y. 2017) to say, "Under New York Law no vested property interest exists if an alleged right is 'inchoate' and 'subject to contingencies.'" DMOL at 9. Without going into the Court of Appeals' analysis in that case, or the specific statutory language the Court was examining in that case, Defendant jumps to arguing that "§ 24-261 makes clear that a citizen complainant has no assurance to a share of any proceeds that may or may not be collected in an enforcement proceeding" and that there is a "long list of contingencies during the process." *Id.* However, a closer examination of *Am. Econ. Ins. Co.* reveals that Defendant's argument fails when the Court's analysis is applied to the pre-amendment language in the Noise Code. The statute before amendment was more like the statute at issue in a prior case that the Court discusses, *Alliance of Am. Insurers v Chu*, 77 NY2d 573 (1991), in which the Court found that the statute *did* grant a vested property interest.

In the case Defendant tries to analogize to, the Court of Appeals was examining a workers' compensation fund that had been set up "to ensure that injured workers with 'closed' cases that *unexpectedly 'reopened'* after many years due to, for example, *'a recurrence of malady, a progress in disease not anticipated, or a pathological development not previously prognosticated'* … would continue to receive necessary benefits, even if the insurance carrier had become insolvent." *Am. Econ. Ins. Co.*, 30 NY3d at 141 (emphasis added). For an injured worker to receive payment from the fund, the statute laid out specific conditions that had to be

met – none of the conditions required the injured worker or the insurers to perform labor or otherwise enrich the government. Instead, the conditions precedent had to do with procedural posture (the claims had to have been closed in order to be reopened), unforeseeable medical circumstances, and qualifying time periods. *Id.* The Court found that these statutory conditions – that never required the injured worker or the insurers to perform labor for or enrich the government – did not provide the plaintiffs with a vested right.

Defendant is asking this Court to infer from *Am. Econ. Ins. Co.* that the statutory promise Defendant made here, of "fair and reasonable compensation" – FAC ¶ 15; 107; pre-amendment § 24-261(d)-(e) – for labor that enriched Defendant, is as inchoate and contingent as a statute that defines a contingency fund with strict temporal conditions for people who experience an "unexpected" and "unanticipated" medical deterioration. But to do this, Defendant ignores the distinction the Court explicitly makes.

The Court contrasted the workers' compensation fund statute with the insurance statute it analyzed in *Alliance of Am. Insurers v Chu*, 77 NY2d 573 (1991), where it found that the "the statutory language … granted the insurers a vested property interest." *Am. Economy Ins. Co.* 30 NY3d at 156. In that statute, there was a provision stating that the money contributors put into the fund would be held separate from other state funds and would be backed by the state's credit, and that "income earned on new contributions to the fund would be either returned to the contributors or credited toward future contributions." *Id.* The Court reasoned that "*these provisions obligated the State to act in good faith* with respect to the fund and its contributors and to ensure that the fund's assets and earnings would be available for their intended purposes" and that "*these limitations established by the Legislature dictate that the contributions made by plaintiffs were not to become State moneys to do with as it wished.*" *Id.* (emphasis added). The

Court held that the government could not then "'eliminate the plaintiffs' rights with respect to contributions already made.'" *Id.*

The language in the pre-amendment Noise Code is like the language in the statute at issue in *Alliance of Am. Insurers.* The pre-amendment Noise Code promised "fair and reasonable compensation" – an allusion to the constitutional Takings Clause language of "just compensation." U.S. Const., amend. V. This fifth amendment adjacent language bound the Defendant to act in good faith, and like the language in *Am. Econ Ins. Co.*, it prevented the Defendant from using the money as it wished by binding the Defendant to *compensate* Plaintiff's labor – the language set up an exchange for work performed, that prevented the government from enriching itself off of citizens contributions. The statute was not creating temporal conditions or uncontrollable medical conditions precedent that were entirely outside the Plaintiff and Defendant's control.

Having bound themselves to distribute the money Defendant received fairly and reasonably as *compensation*, Defendant granted Plaintiff a vested property right in money that Defendant collected – and Defendant cannot just walk off with the benefit of Plaintiff's work fully performed prior to the amendment.  Recall, as detailed above, that Defendant still collected the fines at issue, and doing so often at between $440 and $5,250 per violation.  Defendant is simply keeping almost all the money without providing anything beyond a token amount that would not even cover expenses.

Defendant's statutory change so significantly diminished the promised compensation that it amounted to a categorical taking.

**B.  Plaintiff pled sufficient facts to demonstrate a categorical taking.**

Plaintiff successfully pled a categorical taking, or a complete deprivation of all economically beneficial use of his property. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). The limit of the non-categorical taking doctrine is somewhere around 90% to 92.5%. *See Park Ave. Tower Assoc. v. New York*, 746 F.2d 135, 139 (2d Cir. 1984) (75 to 90 percent); *Clayland Farm Enters., LLC v. Talbot County*, 987 F.3d 346, 354 (4th Cir. 2021) (75 to 92.5 percent). Here, the reduction in compensation was up to 99.6%. Before the law change, Plaintiff was entitled to 50% of penalties between $440 and $5,250. After, Plaintiff only received either $5 or $10. *See, e.g.*, FAC ¶¶ 45-49 (alleging the Defendant collected $2,275 and paid Plaintiff only $5). As such, each of these applications of the changed law to Plaintiff's compensation for work performed before the law changed constituted a complete deprivation, a categorical taking.

### C. Even under a non-categorical analysis, the statutory change applied to the summonses at issue in this case constituted a taking.

Laws that do not "completely deprive an owner of all economically beneficial use of her property," *Lingle*, 544 U.S. at 538, are evaluated under the multi-factor test set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104. *Principle Homecare, LLC v McDonald*, 2025 U.S. App. LEXIS 27360, at *8 (2d Cir Oct. 21, 2025, No. 25-466). The "*Penn Central* analysis involves a 'complex of factors including (1) the regulation's economic effect on the [property owner], (2) the extent to which the regulation interferes with reasonable investment-backed expectations, and (3) the character of the government action.' There is no 'mathematically precise' formula for weighing these factors, which serve more as 'guideposts.'" *Greater Chautauqua Fed. Credit Union v Marks*, 2023 US Dist LEXIS 57087, at *25 (SDNY Mar. 31, 2023)(citing *Palazzolo v. Rhode Island*, 533 U.S. 606, 617, (2001); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 326 n.23, (2002)). When a "case

concerns the retroactive reduction (and, in some cases, the return) of debt [t]hat is not tinkering; it is plausibly a taking." *Id.* at *35.

Here, the FAC demonstrates that the retroactive reduction of Defendant's debt to Plaintiff via regulatory change constituted a plausible taking. As to the first *Penn Central* factor, the regulation had a significant economic impact on Plaintiff. Defendant's regulatory change under Local Law 16 placed a cap on payment, "for work already completed, hearings already held, and/or final results/defaults already entered." FAC ¶87. This cap significantly reduced Plaintiff's promised payout from amounts that covered costs and incentivized performance to merely a nominal amount that would not cover even upfront expenses. *See* FAC ¶¶20-63.

As to the second factor, the regulation interfered with reasonable investment-backed expectations. There is no dispute that Plaintiff was reasonable in taking the fifty-year promise of "fair and reasonable compensation" for work in helping enforce the Noise Code at its word. N.Y.C. Admin. C. § 24-261(d)-(e). *Cf., e.g.*, *Matter of Hennel*, 29 NY3d 487, 493 (2017) (setting out the elements of promissory estoppel). And of course, the reasonably expected effect of making the promise in § 24-261 was precisely to induce the work Plaintiff undertook.

And finally, as to the third *Penn Central* factor, the government action at issue here, the law change, constituted the taking of property rights. As discussed above, the statutory language in the Noise Code created a vested property interest by stating that work performed would receive "fair and reasonable compensation." FAC ¶ 15; 107; N.Y.C. Admin. C. § 24-261(d),(e).

Having induced Plaintiff to do that work, Defendant cannot just walk off with the benefit of that work. But that is what they did here. Defendant did not offer just compensation for the taking of Plaintiff's work. *See* FAC ¶¶20-63. Thus, Defendant's regulatory change was not

"tinkering; it is plausibly a taking." *Greater Chautauqua Fed. Credit Union*, 2023 US Dist LEXIS 57087, at *35.

### D. Defendant cannot justify the Taking.

Defendant does not make any argument if the elements of a Takings claim are met, that there is a sufficient means/ends connection to justify the failure to provide just compensation. However, to that end, the fact that the work at issue was already performed and hearings ***already held*** — and that the government is still collecting the full penalties — dooms any attempt to make a means-ends connection for LL16. By merely reducing payments to citizens for work already performed prior to LL16, after penalties are set at a hearing, application of LL16 to already-heard summonses is not providing any of relief to local businesses the law claims as its goal, since the Defendant already has a penalty in hand and is collecting it in full.

## IV.    PLAINTIFF HAS STATED A BILL OF ATTAINDER CLAIM

A bill of attainder claim has three elements: "specification of the affected persons, punishment, and lack of a judicial trial." *Selective Serv. Sys. v Minnesota Pub. Interest Research Group*, 468 US 841, 847 (1984).  Per the Eastern District case that Defendant cites, "punishment" in the bill of attainder context includes the "punitive confiscation of property." *ACORN v. United States*, 662 F Supp 2d 285, 291 (EDNY 2009).

Plaintiff alleged facts as to each element in the FAC, citing multiple incidents of government agents specifically targeting Plaintiff, a confiscation of compensation owed for work performed by the regulatory change, and a lack of any process, let alone due process, or a judicial trial. *See* FAC ¶¶20-85. Defendant seem to agree that Plaintiff addressed each of these elements in the FAC, they just seem to be saying Plaintiff should have provided *more* than what is required at the pleadings stage – while simultaneously conceding that Plaintiff cited varied

sources, including (1) a legislators testimony, (2) a DEP official's testimony, (3) a police officer's targeted criticism, and (4) a DEP official's statement to press. *See* DMOL at 14. Defendants are incorrect, and Plaintiff has stated Bill of Attainder claim.

### A. The Claims Here are Not Precluded by Prior Litigation.

As an initial matter, claim preclusion does not bar plaintiff from pursuing this claim. Defendants now allege that the prior Article 78 proceeding precludes the claim being brought here. DMOL 14-15. However, Defendants stated in oral arguments before the First Appellate Department that the Article 78 case only covered "cases for which summonses had been issued, but no hearing had yet been held."[4]   Every summons at issue in this case is one where a hearing was held *before* the effective date (or a default was entered in place of a hearing).  No summons addressed by *Detering I*'s post-effective date hearing was addressed. By saying consideration of these summons is precluded here, the City is attempting to go back on its disclaimer to the First Department that *Detering I* only covered "cases for which summonses had been issued, but no hearing had yet been held." In particular, the claim that that the state court provided a " 'full and fair opportunity' to litigate these issues since he is appealing the decision," despite the disclaimer, is without a basis in fact or law.

### B. The Claims Should Not Be Dismissed on the Merits.

At this stage in the proceedings, the Court is required to review the FAC "accepting all factual allegations (but not legal conclusions) as true and drawing all reasonable inferences in favor of the Plaintiff." *Keiler v Harlequin Enters.*, 751 F3d 64, 68 (2d Cir 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *N. J. Carpenters Health Fund v. Royal Bank of Scotland*

---

[4] https://cmi.nycourts.gov/vod/WowzaPlayer/AD1/AD1_Archive2025_Oct30_13-59-12.mp4, at 2:27:10.

*Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013)). Here, Plaintiff has pled facts showing that he was specifically targeted. FAC ¶¶75-81. Plaintiff has demonstrated that the regulatory change has amounted to a punishment by requiring the Plaintiff to take on a debt for work performed, FAC ¶¶50-60,82-85. And Plaintiff has shown this all occurred without due process, let alone a judicial trial, FAC ¶¶20-63. Thus, Plaintiff has met his burden to show a bill of attainder claim at this preliminary stage of the proceedings.

### V.    PLAINTIFF HAS STATED A "STATE-LAW QUASI- CONTRACT/QUANTUM MERUIT/UNJUST ENRICHMENT" CLAIM IN THE ALTERNATIVE TO CONTRACT CLAIMS.

"To sustain a claim of unjust enrichment a plaintiff must show that the defendant has at the plaintiff's expense been enriched and unjustly so, such as when the defendant receives requested goods or services without paying any compensation therefor. In such a case the party who has conferred the benefit may assert a quantum meruit or quasi-contract claim against the recipient and seek a money judgment coupled with such restitutionary relief as may be appropriate as a matter of equity under the circumstances." *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Building 1 Hous. Dev. Fund Co.*, 608 F2d 28, 37 (2d Cir 1979).

Here, as pled in the FAC, Plaintiff performed work in good faith under the original, fifty-year-standing law; Defendant accepted the services, including by accepting Plaintiff's complaints and providing Plaintiff self-prosecution forms, and collecting fines; and then under the new law, Defendant has kept what would otherwise have been Plaintiff's share of the recovery promised as "reasonable compensation" for the work Plaintiff performed. *See e.g.,* ¶¶20-63.

Notably, for the summonses at issue, the changed law did not reduce the amount that businesses had to pay; it only re-allocated Plaintiff's share of that money to Defendant. *Id.* It would be unjust for Defendant to retain the funds it promised to Plaintiff to induce him to

perform environmental services for Defendant. FAC ¶121. Thus, because the FAC contains

factual allegations that if true make out each element of unjust enrichment, Plaintiff may assert a

quantum meruit and quasi-contract claim in the alternative to the contracts claims.

### A. Defendant cites inapposite cases to claim that the lack of a contract means there can be no recovery in quasi-contract, which misstates the law.

Defendant argues that Plaintiff's "quasicontractual claim must be dismissed because no

recovery in quantum meruit or unjust enrichment is available against a municipality when there

is no compliance with statutory mandates, such as registration with the Comptroller and the

Corporation Counsel's approval as to form." DMOL at 17.  For this proposition, Defendant cites

two cases, *S. T. Grand, Inc. v. City of New York*, 298 N.E.2d 105, 108 (N.Y. 1973) and *JFK*

*Holding Co.*, 891 N.Y.S.2d 32, 34 (App. Div. 1st Dep't 2009). Neither of those cases apply here.

*S. T. Grand, Inc.* is a mob case. *See* John Passmore, "When the Mob Infiltrated City

Government," WNYC, Feb. 24, 20216, at https://www.wnyc.org/story/when-mob-infiltrated-

city-government. The Court of Appeals addressed an illegal sanitation contract that had been

rewarded as part of a bribery kickback to a city official. The Court said the "rule is that where

work is done pursuant to an illegal municipal contract, no recovery may be had by the vendor,

either on the contract or in quantum meruit." 32 NY2d at 305. Defendant does not claim that

Plaintiff committed any criminal act by enforcing the Noise Code – nor can they, because

Plaintiff never committed any criminal act, he only ever did what the fifty-year-old statute

induced him to do, in full compliance with the citizen enforcement provisions of the Noise Code.

*JFK Holding Co.* also does not require dismissal of the quasi-contract claim. Defendant

argues that the lack of a formalized contract prohibits recovery in quasi-contract. But this is the

opposite of the law. In fact, in the next case the Defendant's cite after *JFK Holding*, *Tesser v*

*Allboro Equip. Co.*, 302 AD2d 589, 590-591 (2d Dept 2003), the court states exactly this: "The

Supreme Court dismissed this cause of action due to the absence of an express agreement pertaining to compensation. This was error because the existence of an express agreement ordinarily precludes recovery in quantum meruit."

Under Defendant's reading of *JFK Holding* and the City charter, no actions in quasi-contract and unjust enrichment could exist against the City. But in a very recent Southern District Court decision, the Court denied the City's motion to dismiss a quasi-contract claim. "If in fact there is no contract between the City and JobPath, but the Plaintiff provided the City with proprietary software that it used to pay for but is now using for free, then of course JobPath has a claim in unjust enrichment." *Jobpath Partners, LLC v City of NY*, 2025 US Dist LEXIS 199606, at *34 (SDNY Oct. 8, 2025).

### B. Defendant's argument that Plaintiff does not state the value of services he is owed is belied by the contents of the Amended Complaint.

Defendant further argues that Plaintiff "could not recover on a theory of quantum meruit anyway because he has failed to state the value of his services with which the City supposedly enriched itself," citing *Tesser*. But this claim is untrue. Attached to the FAC is Schedule A, in which Plaintiff included as much as information as Plaintiff has access to at this stage of the case regarding the value of his services. FAC ¶ 8. As pled in the Amended Complaint, "Schedule A is based on imperfect public data, and is also limited by what information the City shares publicly: It is not intended to be a final tool for calculating damages, but a set of facts that Plaintiff has a good faith basis to believe are true, in order to plead the claims at issue." FAC ¶ 9. Plaintiff's services have, based on the City's 25-50% representation, achieved numerous monetary judgments for the city ranging from $440 to $5,250 each, which the city has been actively collecting on. There can be no serious dispute as to whether a value of these services has been stated.

16

## VI.    PLAINTIFF HAS STATED A STATE-LAW "ARTICLE 78" CLAIM.

### A.  This Court does not need to abstain from reaching the state law Article 78 claim.

Defendant cites outdated cases to argue that this Court must abstain from deciding the

Article 78 claim and fails to engage with the substance of abstention analysis. "[T]he *Younger*

abstention doctrine provides a narrow exception to that general rule" that federal courts exercise

their given jurisdiction.  *216 E. 29th St. Trust v City of NY*, 2025 US Dist LEXIS 15267, at *16

(SDNY Jan. 28, 2025, No. 24-cv-00595 (ER))(quoting *Colorado River Water Conservation

District v. United States*, 424 U.S. 800, 817 (1976)). The doctrine applies to three "'exceptional

circumstances' involving (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement

proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the

state courts' ability to perform their judicial functions.'" *216 E. 29th St. Trust*, 2025 US Dist

LEXIS 15267, at *16 (quoting *Falco v. Justices of the Matrimonial Parts of the Supreme Court

of Suffolk County*, 805 F.3d 425, 427 (2d Cir. 2015)). "Abstention is required where (1) there is

an ongoing civil enforcement proceeding, (2) an important state interest is involved, and (3) the

target of the enforcement proceeding has an adequate opportunity for judicial review of its

constitutional claims during or after the proceeding. *216 E. 29th St. Trust*, 2025 US Dist LEXIS

15267, at *16-17. Most significantly for this Court's analysis, "The *Younger* abstention doctrine

applies only to claims for declaratory and injunctive relief." *Id.* at *17.

Defendant does not engage with any of the *Younger* rules or analysis in their argument to

dismiss the state law Article 78 claim because none of the narrow exceptions apply here. The

Court is free to exercise jurisdiction over the state law claim.

### B.  Defendant is wrong that the statute of limitations has run on the summonses at issue.

"On a motion to dismiss a cause of action [under the NY Civil Practice Law and Rules]

on the ground that it is barred by the statute of limitations, a defendant bears the initial burden of

establishing, prima facie, that the time in which to sue has expired." *Wells Fargo Bank, N.A. v Burke*, 155 AD3d 668, 669 (2d Dept 2017).

Defendant here argues that an article 78 challenge to the summonses at issue is subject to the four-month statute of limitations, and that "all but nine of the challenged awards that are ripe for review were paid to Detering more than four months before the original complaint was filed (March 13, 2025) and therefore are not timely challenged." DMOL at 18. "The statute of limitations bar includes the only two summonses for which the Amended Complaint provides a substantive level of detail regarding Detering's argument." *Id.*

Defendant assume that the clock on the statute of limitations began to run upon payment – but Defendant does not explain why that would be, and therefore fails to carry the initial required burden.

Defendant overlooks, "[t] more difficult question" of "when the statute of limitations began to run." *Walton v NY State Dept. of Corr. Servs.*, 8 NY3d 186, 194 (2007). "A petitioner who seeks article 78 review of a determination must commence the proceeding 'within four months after the determination to be reviewed becomes final and binding upon the petitioner.' An administrative determination becomes 'final and binding' when two requirements are met: completeness (finality) of the determination and exhaustion of administrative remedies. 'First, the agency must have reached a definitive position on the issue that inflicts actual, concrete injury and second, the injury inflicted may not be … significantly ameliorated by further administrative action or by steps available to the complaining party.'" *Id.*

Even assuming Defendant is correct that the statute of limitations began to run upon payment, contrary to Defendant's assertion, Plaintiff's challenge is timely because Plaintiff did not even receive payment on the two summonses for which the Amended Complaint provides

substantive detail until November 12, 2024. FAC ¶¶ 35, 49. Defendant provides no fact or even

an argument that Plaintiff was on notice that this payment reflected a final judgement. But

assuming Defendant is correct that this payment put the Plaintiff on notice of a final judgment,

that still does not demonstrate that the statute of limitations began to run. On the date of

payment, Plaintiff had not even begun administrative remedies or attempting to ameliorate the

injury, thus putting the filing of the Amended Complaint on March 13, 2025, well within the

statutory period.

**VII.    PLAINTIFF HAS STATED A RETROACTIVITY CLAIM**

The City's position on where the retroactivity line lies is an impermissible attempt to say

two different things to two different tribunals.  Whether for that reason alone, or on its own

merits, the retroactivity line is clearly crossed when applying the law to summonses heard *before*

the operative date of the statute.

**A.  The City is judicially estopped from drawing a new retroactivity line and LL16 "does not implicate [any] prior decision that had already been rendered."**

In *Detering I*, the City was clear:  LL16 was not retroactive, the City said, because "Int.

1194-A does not implicate [any] prior decision that had already been rendered."  *Detering I*,

NYSCEF Doc. No. 137 at 10.  As set out in the FAC, the *Detering I* Court adopted that reasoning

explicitly:  It found no retroactivity problem because — adopting the City's position — LL16

"applies *only* to summonses heard after the operative date."  FAC ¶¶ 66-67 (emphasis added).

The City is now judicially estopped from taking the opposite position.[5]  Judicial estoppel

is an ancient, fundamental principle:

> "Where a party assumes a certain position in a legal proceeding, and succeeds in
> maintaining that position, he may not thereafter, simply because his interests have

---

[5] Relegated to a footnote, the City claims it is "puzzling[]" to claim estoppel here, and then (puzzling in its own right) discusses whether the *Detering I*'s holding is *dicta*.  DMOL at 13 n. 7.  But as set out above, that misses the point:  It is not whether or not it was dicta, it is the fundamental inequity of the City taking both sides of the issue to when it suits it.

changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."
*Davis v Wakelee*, 156 US 680, 689 (1895). And while there occasional benefits of this principle that accrue to the benefit of litigants, "[j]udicial estoppel is designed to prevent the perversion of the judicial process and, as such, is intended to protect the courts rather than the litigants." *Data Gen. Corp. v Johnson*, 78 F3d 1556, 1565 (Fed Cir 1996).

While "the circumstances under which judicial estoppel may appropriately be invoked are not reducible to any general formulation," ""several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Third, courts ask whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v Maine*, 532 US 742, 745 (2001). All three factors are here in spades.

First, the City's position was clearly inconsistent with the one it advances now: "Int. 1194-A ***does not implicate*** [any] prior decision that had already been rendered." *Detering I*, NYSCEF Doc. No. 137 at 10. There is no ambiguity, and the City is now saying LL16 ***does*** impact decisions "that ha[ve] already been rendered." The quote in the City's brief in *Detering I* is, for good reason, part of a section heading in this one.

Second, the City succeeded in persuading the *Detering I* court to accept that party's earlier position, and it was adopted explicitly: The *Detering I* court expressly held that LL16 "applies ***only*** to summonses heard after the operative date," and ***therefore*** it was not

20

impermissibly retroactive.  FAC ¶¶ 66-67 (emphasis added).  Thus, to allow the City to change course and advocate something else would create the perception that the *Detering I* court (and the Appellate Division thereafter, *see above*), was misled:  If the *Detering I* Court did ***not*** think LL16 "applies ***only*** to summonses heard after the operative date," it might well have addressed the retroactivity question differently, particularly given that the scope of where LL16 applies was the core reason the Court found the statute was not impermissibly retroactive.

Last, clearly the City derives an impermissible advantage:  When the statute was challenged directly, the City adopted a narrow construction.  But after prevailing, it now gets a second bite at the apple in crafting a broader construction.  If the City really believed the broader construction was correct, it should have had to defend that construction all along.

Accordingly, the City cannot now assert that that LL16 applies to summonses heard ***before*** the operative date, or argue that such application is not the pernicious sort of retroactivity, having used that as the line in *Detering I*.

### B. Application of LL16 to summonses already heard is perniciously retroactive anyway.

Retroactivity does not, as the City suggests, require a vested property right (and the City cites no law for that proposition).  DMOL at 12-13.  Rather, it merely requires a change in the parties' rights for past conduct.

First, retroactivity, as a Due Process claim, is a claim to *process*.  So, arguments about vesting are simply irrelevant.  The Court of Appeals of New York has been clear the argument "that … tinkering with the recoverable amount has no retroactive effect" is "wrong."  *Matter of Regina Metro. Co., LLC v NY State Div. of Hous. & Community Renewal*, 35 NY3d 332, 368 (2020) (cleaned up).  That is, "while the quantum of contribution may be inchoate, the right to seek contribution itself is vested."  *Knapp v CONRAIL*, 171 Misc 2d 597, 599 (Sup Ct, Albany County

1997); *cf. Cardenas v NY-Presbyterian Med. Group/Queens*, 2025 US Dist LEXIS 173780, at \*5, n 1 (EDNY Sep. 5, 2025).  And indeed, many contingencies remained in *Landsgraf* and *Regina* themselves, such that the City's arguments would require different results in those cases.[6]

Without that first step, the City does not (and cannot) argue the application of LL16 to the decisions already rendered at OATH is not retroactive.  And that intuitive correctness is (perhaps) why the City (successfully) disclaimed its new, broader reading of LL16 in *Detering I*.

Next, the City does not make any argument if the threshold on retroactivity is met that there is a sufficient means/ends connection such that "retroactive application of the legislation is ***itself*** justified by a rational legislative purpose." *Regina*, 35 NY3d at 375 (emphasis in original).  To that end, the fact that the work at issue was already performed and hearings ***already held*** — and that the government is still collecting the full penalties — dooms any attempt to make a means-ends connection for Intro 1194-A. By merely reducing payments to citizens for work already performed prior to Intro 1194-A, after penalties are set at a hearing, application of  Intro 1194-A to already-heard summonses is not providing any of relief to local businesses the law claims as its goal, since the City already has a penalty in hand and is collecting it in full.

---

[6] For example, *Landgraf* found that a provision allowing money damages in new instances was impermissibly retroactive. *Landgraf v Usi Film Prods.*, 511 US 244, 283 (1994). The law was passed before a trial; the question was whether it could be applied at trial. Defendant's argument would seem to suggest that retroactivity was fine.  A plaintiff might lose the trial — and a trial court has the power to not only to remit penalties, but also to dismiss cases altogether for countless reasons. But what matters for the purposes of determining a "retroactive effect" barred by due process is that a law "would impair rights a party possessed when he acted." *Regina Metro. Co., LLC v NY State Div. of Hous. & Community Renewal*, 35 NY3d 332, 365 (2020) (discussing and using *Landgraf*)

## <u>CONCLUSION</u>

For the reasons set out above, the Court should deny the motion to dismiss.

Dated:         December 15, 2025
                      Queens, New York

                                           Respectfully submitted,

                                           **COHEN&GREEN P.L.L.C.**

                                         By:          /s/
                                           J. Remy Green

                                         1639 Centre Street, Suite 216
                                         Ridgewood (Queens), NY 11385
                                            t: (929) 888-9480
                                            f: (929) 888-9457
                                           e: remy@femmelaw.com

                                         **GIDEON ORION OLIVER**
                                         277 Broadway, Suite 1501
                                         New York, NY  10007
                                         t: 718-783-3682
                                         f: 646-349-2914
                                         Gideon@GideonLaw.com