UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| DIETMAR DETERING,<br><br>                              Plaintiff,<br><br>                    -v.-<br><br>CITY OF NEW YORK,<br><br>                              Defendant. |

25 Civ. 2100 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Depending on the audience, Plaintiff Dietmar Detering is either a civic-minded citizen enforcer or a scheming profiteer.  Espousing the former view, Plaintiff challenges the disposition of a set of summonses related to purported noise violations that he filed with the Office of Administrative Trials and Hearings ("OATH"), an agency of Defendant City of New York (together with its agencies, the "City").  The City allows citizen enforcement of its Noise Control Code (the "Noise Code"), but in January 2024, the City passed Local Law 16 of 2024 ("Local Law 16"), which greatly reduced the compensation to which citizen enforcers are entitled.

Plaintiff takes issue with the fact that after Local Law 16 took effect, the City paid him in accordance with the diminished compensation structure even for summonses that were adjudicated before the change in law.  Plaintiff argues that such an application of Local Law 16 violates various provisions of the United States Constitution, state common law, and state administrative law.  Before the Court now is the City's motion to dismiss.  For the reasons explained below, the Court grants the City's motion with respect to most of

Plaintiff's claims, except for Plaintiff's federal due process claim, which the Court allows to proceed.

**BACKGROUND**[1]

### A.    Factual Background

#### 1.    The Noise Code and Its Citizen Enforcement Provisions

The Court begins by briefly summarizing the municipal law out of which the current dispute rises.  At a high level, the Noise Code establishes a program for reducing excessive noise in the City, and it is enforced by the City's Department of Environmental Protection ("DEP").  (FAC ¶ 12).  *See* N.Y.C. Admin. Code § 24-202.  A City agency, OATH, is responsible for the

---

[1]    This Opinion draws its facts from the First Amended Complaint ("FAC" (Dkt. #21)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court also relies, as appropriate, on Schedule A ("Schedule A" (Dkt. #21 at 20-43)), which is attached to and incorporated by reference in the FAC.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint).

Finally, the Court relies on certain exhibits attached to the Declaration of Seth Motel ("Motel Decl." (Dkt. #24)), including the Amended Verified Petition filed by Plaintiff in his state court action ("*Detering I* Amended Petition" (Motel Decl., Ex. B)).  These exhibits pertain to other litigations between the parties and are relevant to the question of whether any of Plaintiff's claims in the instant litigation is precluded.  While the Court takes judicial notice of these documents, it does so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998)); *see also Holland* v. *JPMorgan Chase Bank, N.A.*, No. 19 Civ. 233 (PAE), 2019 WL 4054834, at *3 (S.D.N.Y. Aug. 28, 2019) ("[I]t is proper to consider public documents on a motion to dismiss to determine whether claims are barred by prior litigation." (internal quotation marks omitted) (quoting *Cowan* v. *Codelia*, No. 98 Civ. 5548 (JGK), 2001 WL 856606, at *1 (S.D.N.Y. July 30, 2001))).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #23); to Plaintiff's memorandum of law in opposition to Defendant's motion as "Pl. Opp." (Dkt. #27); and to Defendant's reply memorandum of law as "Def. Reply" (Dkt. #28).

administration of adjudicatory hearings, and the Environmental Contral Board ("ECB") within OATH enforces the provisions related to noise pollution and conducts the proceedings for violations thereof.  (FAC ¶ 12).  *See* N.Y.C. Charter §§ 1048(1), 1049-a(c)(1)(d), (d)(1)(a).

### a.    The Citizen Enforcement Provisions

The Noise Code allows citizens to enforce some of its provisions.  (FAC ¶¶ 12, 15, 21, 39).  *See* N.Y.C. Admin. Code § 24-261(a).  The citizen enforcement regime works as follows:  A citizen complainant first serves a complaint on the DEP, affording the agency an opportunity to review the matter.  (FAC ¶ 15).  *See* N.Y.C. Admin. Code § 24-261(a).  Then, the DEP can serve a written notice on the complainant that it determines the complaint to be "frivolous or duplicitous."  N.Y.C. Admin. Code § 24-261(b)(2).  If the DEP does not do so within thirty days, the agency may choose to prosecute the offense instead of the citizen complainant, or it may intervene in a future proceeding.  (FAC ¶¶ 12, 15).  *See* N.Y.C. Admin. Code § 24-261(b)(1), (c).  Whether the citizen complainant or the DEP prosecutes the alleged violation, if a violation has been established, the ECB "may remit, in whole or in part, [the] penalty, if … the respondent is no longer in violation."  N.Y.C. Admin. Code § 24-257(b)(5).

### b.    The Compensation Structure for Citizen Enforcement and the Effect of Local Law 16

Before January 2024, the Noise Code provided that for citizen enforcement actions of certain Noise Code provisions, the ECB would award the citizen complainant "out of the proceeds collected, fair and reasonable

3

compensation, which shall not exceed [twenty-five] 25 percent of the proceeds collected" for actions prosecuted by the DEP or "out of the proceeds collected, [fifty] 50 percent for any civil penalty" for actions prosecuted by the citizen complainant.  (FAC ¶ 15).  *See* N.Y.C. Admin. Code § 24-261(d)-(e); N.Y.C. Loc. Law 16/2024, § 1.  In other words, if the DEP prosecuted a citizen complaint, the citizen would be entitled to fair and reasonable compensation *up to* 25% of what the City collected, but if the citizen prosecuted the complaint, she would be entitled to a fixed sum in the amount of 50% of what the City collected.

The City Council then enacted Local Law 16, effective January 29, 2024, which amended this compensation structure.  (FAC ¶¶ 13-18).  The provision now provides that, in the same circumstances, the ECB shall "out of the proceeds collected" award the citizen complainant $5 for actions prosecuted by DEP or $10 for actions prosecuted by the citizen complainant.  (*Id.* ¶ 15).  *See* N.Y.C. Admin. Code § 24-261(d)-(e).  The provision also capped the penalties for certain violations at $50.  (FAC ¶¶ 14-16).  *See* N.Y.C. Loc. Law 16/2024, § 2.

### c.    The Legislative History of Local Law 16

During the hearings for Local Law 16, certain stakeholders made various comments regarding the law's passage that Plaintiff believes are relevant to the instant action.  (*See* FAC ¶¶ 76-77).  Specifically, Councilmember James F. Gennaro stated, among other things, that Local Law 16 was necessary to stop "profiteers running around who do not have your best interests at heart" and who "just want to make a lot of money."  (*Id.* ¶ 76(d)).  He also stated that the

previous regime was "helping [certain citizen enforcers] essentially …

perpetuate a scam." (*Id.* ¶ 76(f)).

Additionally, during the hearings, DEP Deputy Commissioner Angela

Licata stated that the same citizen enforcers "are not using enforcement to

achieve compliance and reduce noise pollution," but rather "are using it for

personal profit." (FAC ¶ 77(a)). She advocated for the passage of Local Law 16

to "make it harder for bad actors to use these violations as a source of

significant income." (*Id.* ¶ 77(b)).

Plaintiff alleges that the DEP advocated for Local Law 16, "discussing

Plaintiff specifically." (FAC ¶ 80). But Plaintiff provides no evidence for this

assertion. Instead, he relies on a news article that mentions him by name, but

includes a quote from the DEP that does not mention Plaintiff. (*Id.* ¶ 80 n.5).

Plaintiff also alleges that a police officer called his summonses "fake." (*Id.*

¶¶ 78-79).

### 2. Plaintiff's Citizen Enforcement Activities

Defendant is a municipal corporation in New York. (FAC ¶ 2). Defendant

acts by and through its agencies, employees, and agents, including OATH, the

DEP, and the ECB. (*Id.*). Plaintiff is a resident of New York who has

participated in the Noise Code's citizen reporting provision. (*Id.* ¶¶ 1, 10). He

alleges that he has "expended significant funds, work, and time in enforcing

the Noise Code." (*Id.* ¶ 82).

Before Local Law 16 went into effect, Plaintiff had filed numerous

summonses with OATH. (FAC ¶¶ 7-8, 19; *see generally* Schedule A). Indeed,

he has attached Schedule A to his Complaint, which includes hundreds of summonses in which penalties (of between $50 and $5,250) were assessed before Local Law 16 went into effect.  (Schedule A).[2]  Schedule A includes penalties that OATH awarded after a merits hearing and those that OATH awarded as a result of a respondent's default.  (FAC ¶ 19; *see* Schedule A).

For most of the summonses listed in Schedule A, Plaintiff prosecuted the claims.  (*See* Schedule A).  DEP prosecuted others.  (*See id.*).  Plaintiff has received payment on 47 of the claims, but each payment was either $5 if DEP prosecuted the claim, or $10 if Plaintiff prosecuted the claim.  (*Id.*; FAC ¶ 72).  OATH has refused to pay any more than that.  (FAC ¶¶ 72, 74, 84).

For each of the 47 paid violations, Plaintiff received payment after Local Law 16 went into effect.  (Schedule A).  From Schedule A, the Court cannot discern when the City collected payment.  (*See id.*).  That said, the FAC suggests that the City received payment after Local Law 16 went into effect, given the allegation that the "OATH has refused to pay Detering his award for any of the Schedule A Summonses where payment has been collected after the effective date of [Local Law 16], except with [the] $5/$10 caps."  (FAC ¶ 74).  Such an allegation suggests that for each of the summonses listed in Schedule A, the City collected payment after Local Law 16's effective date, even though the penalty was assessed prior to Local Law 16's effective date.

---

[2]  Plaintiff asserts that "Schedule A is based on imperfect public data," so there may be additional relevant summonses.  (FAC ¶ 9).

### B.      Procedural Background

#### 1.      The State Court Action

Plaintiff initially brought a claim in New York state court against the ECB, OATH, the New York City Council, and the Mayor (the "*Detering I* Defendants").  *See generally Detering* v. *N.Y.C. Env't Control Bd.*, Index No. 159847/2023, 2024 WL 2999114 (N.Y. Sup. Ct. June 13, 2024) ("*Detering I*"), *aff'd*, 247 N.Y.S.3d 335 (1st Dep't 2025).  Mr. Detering, along with a group of other petitioners, alleged, among other things, that Local Law 16 violated (i) rulemaking procedures under the New York City Charter, (ii) environmental procedures under the City Environmental Quality Review and the State Environmental Quality Review Act, and (iii) both the United States and New York Constitutions.  *Id.* at *1.

Relevant to the instant action, Mr. Detering argued that the *Detering I* Defendants violated the United States Constitution's (i) Takings Clause, U.S. Const. amend. V and (ii) Contracts Clause, U.S. Const. art. I, § 10, cl. 1.  *See Detering I*, 2024 WL 2999114, at *2-3.  (*See Detering I* Amended Petition ¶¶ 181 (alleging that "the City has confiscated private property without a rational basis and without just compensation"), 207-208 (alleging a violation of the Contracts Clause)).  Relatedly, Mr. Detering raised a claim that Local Law 16 had an "[u]nconstitutional [r]etroactive [a]pplication," which he appears to relate to his Contracts Clause claim.  (*Detering I* Amended Petition ¶¶ 207-208).  *See Detering I*, 2024 WL 2999114, at *3 (discussing retroactivity).

### a.   *Detering I*

Eventually, on June 13, 2024, the state trial court rejected each of Mr. Detering's arguments against Local Law 16, including each of his constitutional claims.  *See Detering I*, 2024 WL 2999114, at *6 ("It is not this Court's role to opine on the wisdom of Intro 1194-A. …  [T]he City Council is permitted to modify penalties and cap recovery; that it did not side with petitioners does not mean there is a constitutional violation or the numerous other alleged issues raised by petitioners.").[3]

On the constitutional claims, the trial court held that Mr. Detering had "failed to state a viable claim for a constitutional violation" under the Fifth or Fourteenth Amendments.  *Detering I*, 2024 WL 2999114, at *3.  The court explained:

> [Petitioners] have no vested property interest in the right to recover a certain amount of fines levied against businesses who violate the Noise Code.  Moreover, there is no private contract between [the City] and petitioners that could form the basis of a constitutional cause of action. Nothing here suggests that petitioners had a vested right in recovering a certain percentage of Noise Code fines in perpetuity simply because the system was in place for a long time.
>
> And petitioners did not establish that there was any improper retroactive effect. The legislation applies only to summonses heard after the operative date; that is, the legislation does not attempt to claw back monies previously recovered by citizen complainants.

---

[3]   The trial court sided with Mr. Detering, however, in his challenge to an administrative resolution that preceded Local Law 16, which resolution is not at issue here.  *See Detering* v. *N.Y.C. Env't Control Bd.*, Index No. 159847/2023, 2024 WL 2999114, at *7 (N.Y. Sup. Ct. June 13, 2024) ("[T]he Court finds that the August 2023 resolution is impermissible because it constituted improper rulemaking."), *aff'd*, 247 N.Y.S.3d 335 (1st Dep't 2025).

*Id.*

###### b.    *Detering II*

After the trial court issued its opinion, Mr. Detering and the other petitioners in that case appealed.  *See generally Detering* v. *N.Y.C. Env't Control Bd.*, 247 N.Y.S.3d 335 (1st Dep't 2025) ("*Detering II*").  On December 2, 2025, the First Department affirmed the trial court's decision, including its resolution of Mr. Detering's constitutional claims.  *Id.* at 337, 339 ("Petitioners' contentions that Local Law No. 16 of 2024 … unconstitutionally impedes an alleged contract between them and the City … , violates their due process rights, and effects a taking of private property without just compensation are meritless[.]").

On Mr. Detering's Contracts Clause claim, the First Department explained that "[t]he Noise Control Code does not create a contract between petitioners, as citizen complainants, and the City regarding either complainants' ability to commence and prosecute administrative enforcement actions or their eventual recovery of [compensation]."  *Detering II,* 247 N.Y.S. 3d at 338.  On Mr. Detering's Takings Clause claim, the First Department explained that the petitioners' property interests were inchoate, subject to continencies, and "not vested" because a citizen complainant is not entitled to payment until "the City has collected the penalty, and because ECB is empowered to remit the penalty entirely."  *Id.*  Finally, on Mr. Detering's retroactivity claim, which the First Department analyzed using a due process

framework, the court determined that Local Law 16 was not retroactive, and even if it were, the retroactivity had a rational basis. *Id.*

### 2. The Instant Action

Nine months after the trial court's decision, but before the First Department's affirmance, Plaintiff commenced the instant action by filing the Complaint on March 13, 2025. (Dkt. #1). On July 1, 2025, Defendant informed the Court of its intention to move to dismiss the Complaint. (Dkt. #16). Plaintiff later responded to Defendant's letter. (Dkt. #18). Dispensing with its normal practice of holding a pre-motion conference, the Court instead scheduled briefing on Defendant's anticipated motion, building in time for Plaintiff to amend his complaint. (Dkt. #20). Plaintiff then filed the FAC on September 5, 2025. (Dkt. #21).

The FAC raises six causes of action. (*See* FAC ¶¶ 86-126). Three assert violations of the federal Constitution brought under 42 U.S.C. § 1983. *First,* Plaintiff alleges that Local Law 16 constitutes an improper taking for which the City has not offered just compensation. (*Id.* ¶¶ 86-94). *Second,* Plaintiff alleges that Local Law 16 is impermissibly retroactive and thus violates due process. (*Id.* ¶¶ 95-100). *Third,* Plaintiff alleges that Local Law 16 is an impermissible bill of attainder and impairs Plaintiff's "actual or implied contract for … labor" in violation of the Contracts Clause — essentially two unique causes of action. (*Id.* ¶¶ 101-105).

The remaining causes of action arise under state law. *Fourth,* Plaintiff alleges a state law breach of contract claim with respect to each noise

summons at issue.  (FAC ¶¶ 106-113).  *Fifth*, Plaintiff alleges a state law quasi-contract claim should the Court determine that no contract was formed.  (*Id.* ¶¶ 114-122).  *Sixth*, Plaintiff alleges that the application of Local Law 16 "is arbitrary, capricious, and an abuse of discretion," which is a claim under Article 78.  (*Id.* ¶¶ 123-126).  Plaintiff seeks damages, injunctive relief, attorneys' fees, and declaratory relief.  (*Id.* at 18).

Notably, some of Plaintiff's alleged violations have a slightly narrower focus than those he raised in the state court action.  Specifically, many alleged violations in the instant action relate to Local Law 16's application to "work already completed, hearings already held, and/or final results/defaults … entered" before Local Law 16 went into effect.  (FAC ¶¶ 87, 96, 102).  *Cf. Detering I*, 2024 WL 2999114, at *3 (indicating that the court only considered the constitutionality of Local Law 16's application "to summonses *heard after* the operative date" (emphasis added)).

After Plaintiff filed the FAC, the City filed its motion to dismiss, along with supporting papers, on October 10, 2025.  (Dkt. #22-24).  The City advances various arguments for dismissal.  *First*, the City argues that Plaintiff's challenges to most of the summonses are unripe.  (Def. Br. 3-4).  *Second*, the City argues that issue preclusion compels the dismissal of Plaintiff's (i) breach of contract claim, (ii) Takings Clause claim, (iii) Contracts Clause claim, and (iv) retroactivity claim.  (*Id.* at 4-5; Def. Reply 1-3).  *Third*, the City argues that, even if issue preclusion does not doom those claims, they fail as a matter of law.  (Def. Br. 6-13).  *Fourth*, the City asks the Court to bar Plaintiff's bill of

attainder claim under claim preclusion or dismiss it on the merits. (*Id.* at 13-16). *Fifth*, the City asks the Court to decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, or to dismiss those on the merits as well. (*Id.* at 16-19).

Plaintiff filed his opposition on December 12, 2025 (Dkt. #27), ten days after the First Department's decision in *Detering II*, *see generally* 247 N.Y.S.3d 335. Plaintiff's opposition agrees with the City that *Detering II* precludes Plaintiff's (i) breach of contract claim and (ii) Contracts Clause claim. (Pl. Opp. 5 n.2). Accordingly, those claims are dismissed. But Plaintiff's opposition maintains Plaintiff's other claims. (*See generally* Pl. Opp.). Defendant replied on January 9, 2026, concluding briefing on the instant motion. (Dkt. #28).

## DISCUSSION

### A.    The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Article 78 Claim

The Court begins with a preliminary question: whether it should — or even may — exercise supplemental jurisdiction over Plaintiff's Article 78 claim. Federal courts have the authority to exercise "supplemental jurisdiction over … claims that are so related to [their federal] claims … that they form part of the same case or controversy." 28 U.S.C. § 1367(a). That said, "district courts may decline to exercise [such] supplemental jurisdiction" if "there are … compelling reasons for declining jurisdiction." *Id.* § 1367(c).

The prevailing position among courts in this Circuit is that "[t]he very nature of an Article 78 proceeding presents such compelling reasons" to decline

the exercise of supplemental jurisdiction. *Morningside Supermarket Corp.* v. *N.Y. State Dep't of Health*, 432 F. Supp. 2d 334, 346 (S.D.N.Y. 2006). This is because "[a]n Article 78 proceeding is a novel and special creation of state law, [that] differs markedly from the typical civil action brought in federal district court in a number of ways." *Id.* (internal quotation marks omitted and alteration adopted) (quoting *Lucchese* v. *Carboni*, 22 F. Supp. 2d 256, 258 (S.D.N.Y. 1998)).

Consequently, "District Courts in this Circuit have consistently declined to exercise supplemental jurisdiction over Article 78 claims." *Furk* v. *Orange-Ulster BOCES*, No. 15 Civ. 6594 (NSR), 2016 WL 6560408, at *6 (S.D.N.Y. Nov. 2, 2016) (collecting cases); *see also, e.g.*, *De Jesus* v. *City of New York*, No. 10 Civ. 9400 (GBD), 2012 WL 569176, at *4 (S.D.N.Y. Feb. 21, 2012) ("Article 78 is … a procedure best suited for state courts. Recognizing state courts' exclusive jurisdiction over Article 78, courts within this circuit have consistently dec[l]ined to exercise supplemental jurisdiction over Article 78 claims." (footnote omitted) (collecting cases)); *Cartagena* v. *City of New York*, 257 F. Supp. 2d 708, 709 (S.D.N.Y. 2003) ("The cases that have addressed the issue have consistently declined to exercise supplemental jurisdiction over Article 78 claims." (collecting cases)); *Camacho* v. *Brandon*, 56 F. Supp. 2d 370, 380 (S.D.N.Y. 1999) ("[W]e see no reason to exercise [the court's] discretion [over Plaintiff's Article 78 claim] by adjudicating a purely state procedural remedy."), *reconsideration denied*, 69 F. Supp. 2d 546 (S.D.N.Y. 1999); *Lucchese*, 22 F. Supp. 2d at 258 ("Article 78 proceedings were designed for the

13

state courts, and are best suited to adjudication there."). This is the case even in actions with surviving federal claims. *See, e.g.*, *Birmingham* v. *Ogden*, 70 F. Supp. 2d 353, 372 (S.D.N.Y. 1999) ("[F]ederal courts are loath to exercise jurisdiction over Article 78 claims[ ] [e]ven where a plaintiff has one or more federal claims still alive[.]"); *see also Camacho*, 56 F. Supp. 2d at 373-74, 380 (dismissing Article 78 claim despite pending federal claim); *Lucchese*, 22 F. Supp. 2d at 257-58 (same).

In fact, some federal courts have held that they lack the power to exercise supplemental jurisdiction over Article 78 claims, even if they so wished. *See, e.g.*, *Blatch ex rel. Clay* v. *Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) (holding that an Article 78 claim "must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims"). *But see, e.g.*, *Kelly* v. *City of Mount Vernon*, 344 F. Supp. 2d 395, 406 (S.D.N.Y. 2004) ("I could consider the claim if it were pendent to a viable federal claim, but all of Plaintiff's federal claims have been dismissed."). The Court need not adopt such a categorical rule, but it nonetheless follows its sister courts and declines in this instance to exercise supplemental jurisdiction over plaintiff's Article 78 claim. Accordingly, the City's motion to dismiss that claim is granted without prejudice. The Court next considers the ripeness of Plaintiff's remaining claims.

14

**B.**    **The Court Denies Defendant's Motion to Dismiss Any of Plaintiff's Claims as Unripe**

### 1.    Applicable Law

"Federal courts may adjudicate only those 'real and substantial controversies admitting of specific relief[,] as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Auerbach* v. *Bd. of Educ. of the Harborfields Cent. Sch. Dist.*, 136 F.3d 104, 108 (2d Cir. 1998) (alterations adopted) (quoting *Lewis* v. *Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). "To be justiciable, a cause of action must be ripe — it must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc.* v. *Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd.* v. *Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)). "The 'basic rationale' of the ripeness doctrine is to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements ... until [a] decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Entergy Nuclear Vt. Yankee, LLC* v. *Shumlin*, 733 F.3d 393, 429 (2d Cir. 2013).

"A court's ripeness inquiry focuses on whether a particular claim, rather than a particular lawsuit, is developed sufficiently such that the claim is proper for adjudication." *Osborne* v. *Fernandez*, No. 06 Civ. 4127 (CS) (LMS), 2009 WL 884697, at *28 (S.D.N.Y. Mar. 31, 2009) (citing *Murphy* v. *New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005)). Claims are not ripe if they depend upon "contingent future events that may not occur as anticipated, or indeed

may not occur at all." *Thomas* v. *Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985).

That said, a claim is ripe if injury is "imminent," even if it has not yet occurred. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Ross* v. *Bank of Am., N.A. (USA)*, 524 F.3d 217, 226 (2d Cir. 2008)).  In other words, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'"  *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013)); *accord MBIA Inc.* v. *Certain Underwriters at Lloyd's*, 33 F. Supp. 3d 344, 351-52 (S.D.N.Y. 2014).

### 2. Plaintiff's Remaining Claims Are Ripe

Plaintiff acknowledges that the City has collected on only 47 of the 1,009 summonses listed in Schedule A.  (*See* Schedule A).  The City seizes on this fact to argue that the remaining 962 summonses are not ripe for review and that the Court must thus dismiss Plaintiff's challenges to them for lack of subject matter jurisdiction.  (Def. Br. 3-4).  Plaintiff's remaining claims, however, are ripe.

The City's argument as to ripeness is wrong for two reasons.  *First*, the City misconstrues Plaintiff's claims.  Plaintiff does not challenge each summons individually.  Instead, he challenges the City's policy of implementing Local Law 16 in a specific way.  Here, the City has already provided Plaintiff with diminished awards for summonses adjudicated before Local Law 16 went

16

into effect.  (*See* FAC ¶ 72; Schedule A).  OATH has repeatedly refused to pay Plaintiff any more than that.  (FAC ¶¶ 72, 74, 84).  And there is no indication that such a policy will change.

In other words, the City's policy has been "formalized and its effects felt in a concrete way." *Entergy Nuclear Vt. Yankee, LLC*, 733 F.3d at 429.  Plaintiff thus raises more than "mere hypothetical question[s]."  *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 687 (internal quotation marks omitted) (quoting *AMSAT Cable Ltd.*, 6 F.3d at 872).  Instead, his challenge to the City's policy has identified "a real, substantial controversy," even as to summonses on which the City has yet to collect.  *Id.* (internal quotation marks omitted) (quoting *AMSAT Cable Ltd.*, 6 F.3d at 872).

Indeed, the Court balks at the idea that it lacks jurisdiction to prevent the City from continuing a policy that, Plaintiff argues, violates the United States Constitution.  *Cf., e.g.*, *Puerto Rico* v. *Branstad*, 483 U.S. 219, 228 (1987) ("It has long been a settled principle that federal courts may enjoin unconstitutional action by state officials.").  Such would be the effect if the City is right in arguing that the Court cannot rule on the constitutionality of the City's policy as it applies to future adjudications.  Here, especially given that Plaintiff seeks declaratory and injunctive relief, his claims are undeniably ripe.

*Second*, even if the Court were to view Plaintiff as having raised separate claims as to each summons, his claims are ripe because his injury is imminent as to the remaining 962 summonses.  As explained above, the City has repeatedly refused to pay more than the reduced amounts specified in Local

17

Law 16.  (FAC ¶¶ 72, 74, 84).  And based on Schedule A, the City appears to be continuing the process of collecting on the outstanding penalties.  (*See* Schedule A (noting disbursements to Plaintiff throughout 2024)).

In other words, "there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List*, 573 U.S. at 158 (quoting *Clapper*, 568 U.S. at 414 n.5). Indeed, the Court believes that even Plaintiff's quasi-contract claim is entirely justiciable on this basis.  *Cf. JP Morgan Chase Bank, N.A.* v. *Maurer*, No. 13 Civ. 3302 (NRB), 2015 WL 539494, at *6 (S.D.N.Y. Feb. 10, 2015) ("[A]ny increase in wealth — even if unrealized or illiquid — is an enrichment."). Consequently, the City's ripeness arguments are unavailing as to Plaintiff's remaining claims.  The Court now turns to the merits of those claims.

**C.    The Court Grants in Part and Denies in Part Defendant's Motion to Dismiss Plaintiff's Claims Under Rule 12(b)(6)**

### 1.    Applicable Law

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in Plaintiff['s] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'"  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged

18

in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

A plaintiff can overcome a Rule 12(b)(6) motion if the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [Plaintiff's] claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### 2. Preclusion Bars Plaintiff's Bill of Attainder Claim, But Not His Other Remaining Claims

While the City proffers several bases for dismissal under Rule 12(b)(6), the Court begins by addressing a threshold issue: whether preclusion forecloses certain of Plaintiff's claims. *See generally Weir* v. *Montefiore Med. Ctr.*, No. 23 Civ. 4468 (KPF), 2023 WL 5747642, at *3, *6 (S.D.N.Y. Sept. 6, 2023) (discussing and distinguishing between claim preclusion and issue preclusion). Notably, issues of preclusion may be properly decided on a motion to dismiss under Rule 12(b)(6). *Peralta* v. *St. Luke's Roosevelt Hosp.*, No. 14 Civ. 2609 (KPF), 2015 WL 3947641, at *4 (S.D.N.Y. June 26, 2015) (citing

*Cameron* v. *Church*, 253 F. Supp. 2d 611, 617-24 (S.D.N.Y. 2003)); *see also*
*Thompson* v. *County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994) ("As an initial
matter, we note that the doctrine of *res judicata* or issue preclusion in no way
implicates jurisdiction.  *Res judicata* challenges may properly be raised via a
motion to dismiss for failure to state a claim under Rule 12(b)(6)." (collecting
cases)); *Salahuddin* v. *Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (per curiam)
(affirming dismissal of claims under Rule 12(b)(6) on grounds of preclusion).

The City argues that issue preclusion mandates dismissal of Plaintiff's
Takings Clause and retroactivity claims.  (Def. Br. 4-5; Def. Reply 1-3).[4]
Further, the City argues that claim preclusion mandates dismissal of Plaintiff's
bill of attainder claim.  (Def. Br. 14-15; Def. Reply 7).  The Court disagrees with
the City's first point, but agrees with the City's second point.

### a.    The Court Applies New York Preclusion Law

When ruling on the preclusive effect of a state court decision, federal
courts apply the rules of the state that issued the earlier judgment.  *Hoblock* v.
*Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005), *abrogated on
other grounds by*, *T.M.* v. *Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739 (2026).
This is required by the Full Faith and Credit Act, 28 U.S.C. § 1738.  *Hoblock*,
422 F.3d at 93.  Consequently, New York law dictates whether the state court
action precludes any claims in the instant action.

---

[4]     As discussed, Plaintiff agrees with the City's argument that *Detering II* precludes
Plaintiff's breach of contract claim and his Contracts Clause claim.

### b.    Issue Preclusion Does Not Bar Plaintiff's Taking Clause or Retroactivity Claims

Under the principle of issue preclusion, otherwise known as collateral estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Schiro* v. *Farley*, 510 U.S. 222, 232 (1994) (internal quotation marks omitted) (quoting *Ashe* v. *Swenson*, 397 U.S. 436, 443 (1970)).  Under New York law, for issue preclusion to apply, "[i] the identical issue necessarily [must have been] decided in the prior action and [be] decisive of the present action, and [ii] the party to be precluded from relitigating the issue [must have] had a full and fair opportunity to litigate the issue in the prior action." *Evans* v. *Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citing *Kaufman* v. *Eli Lilly & Co.*, 65 N.Y.2d 449, 455-56 (1985)); *accord Hansen* v. *Miller*, 52 F.4th 96, 101 (2d Cir. 2022) ("The party advocating for a court to apply collateral estoppel must show 'that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party.'" (quoting *Buechel* v. *Bain*, 97 N.Y.2d 295, 303-04 (2001))).  Put simply, where a party has an opportunity to fully and fairly litigate an issue, does so, and loses, that party may not contest that issue in a subsequent proceeding.

### i.    Plaintiff's Taking Clause Claim

The Takings Clause provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V.  "Th[is] clause applies to the states through the Fourteenth Amendment." *1256 Hertel Ave. Assocs., LLC* v. *Calloway*, 761 F.3d 252, 261 (2d Cir. 2014) (citing *Kelo* v. *City*

*of New London*, 545 U.S. 469, 472 n.1 (2005)).  The Takings Clause protects only "*vested* property rights."  *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 266 (1994) (emphasis added).  "To determine whether a property interest has vested for Takings Clause purposes, 'the relevant inquiry is the certainty of one's expectation in the property interest at issue.'"  *Bowers* v. *Whitman*, 671 F.3d 905, 913 (9th Cir. 2012) (quoting *Engquist* v. *Or. Dep't of Agric.*, 478 F.3d 985, 1002 (9th Cir. 2007)).  "[I]f the property interest is 'contingent and uncertain' or the receipt of the interest is 'speculative' or 'discretionary,' then the government's modification … of the interest will not constitute a constitutional taking."  *Id.* (quoting *Engquist*, 478 F.3d at 1003-04).

The central question here is whether Plaintiff has a vested property right in proceeds from summonses adjudicated before Local Law 16 went into effect. (Def. Br. 9; Pl. Opp. 6-7).  *Detering II* did not "necessarily" decide that "identical issue."  *Evans*, 469 F.3d at 281.  That is because the entire state court litigation hinged on the understanding that Local Law 16 "applies only to summonses *heard after* the operative date."  *Detering I*, 2024 WL 2999114, at *3 (emphasis added).  Both the trial court and the First Department thus did not *necessarily* consider whether a citizen complainant had a vested property interest in summonses heard before the operative date of Local Law 16, which summonses are at issue here.  *See id.*

It is true that in its rejection of Mr. Detering's Takings Clause claim, *Detering II* stated that Mr. Detering's property interest was "not vested" "until [i] a[n] [administrative] proceeding is concluded and [ii] the City has collected

the penalty." *Detering II*, 247 N.Y.S.3d at 338.  Such a statement, if given preclusive effect in its entirety, would resolve Plaintiff's Takings Clause claim here because the City had not collected the penalty until after Local Law 16 went into effect.  (*See* Schedule A; FAC ¶ 74).

But the Court declines to give the full statement preclusive effect because *Detering II*'s holding only required that court to determine that a property interest had not yet vested until at least the administrative proceeding had concluded.  That was the only *necessary* determination to the ultimate decision.  Here, however, that necessary determination does not resolve the case because the administrative proceedings did, in fact, conclude before Local Law 16's effective date.  (*See* Schedule A).

In other words, the necessary holding in *Detering II* is that Mr. Detering lacked a vested property interest at least until the City collected the penalty. Here, the key question is whether Mr. Detering lacked a property interest even after the City collected the penalty.  *Detering II* may have commented on that question in dicta, though its statement was not necessary to the ultimate holding and thus lacks preclusive effect.

Flipping the coin, it is also possible to say that because summonses adjudicated before Local Law 16's effective date were not explicitly at issue in the state court action, Mr. Detering did not have "a full and fair opportunity to litigate the issue" of whether he had a vested property interest in those summonses, another requirement for issue preclusion.  *Evans*, 469 F.3d at

23

281.  Either way, the Court cannot apply the First Department's decision in *Detering II* to preclude Plaintiff's Takings Clause claim here.

### ii.    Plaintiff's Retroactivity Claim

For similar reasons, issue preclusion also cannot bar Plaintiff's retroactivity claim.  *Detering II* rejected Mr. Detering's retroactivity claim because it determined that Local Law 16 was not retroactive.  247 N.Y.S.3d at 338.  Indeed, the First Department operated under the assumption that Local Law 16 "applies only to summonses *heard after* the operative date."  *Detering I*, 2024 WL 2999114, at *3 (emphasis added).

Before this Court, however, the City argues that Local Law 16 applies to some summonses heard before — though paid after — the operative date. *Detering II* had no occasion to consider whether applying Local Law 16 to those summonses would be impermissibly retroactive.  In other words, the *Detering II* court never considered "the identical issue," so issue preclusion is inappropriate.  *Evans*, 469 F.3d at 281.

*Detering II* added in dicta that even if Local Law 16 were retroactive, it would not violate due process.  *Detering II*, 247 N.Y.S.3d at 338.  But as with the Takings Clause claim, this statement was not "necessar[y]" to *Detering II*'s conclusion on Mr. Detering's retroactivity claim.  *Evans*, 469 F.3d at 281. Alternatively, Plaintiff did not have "a full and fair opportunity to litigate the issue" given the parties' mutual understanding that Local Law 16 would not apply to summonses adjudicated prior to Local Law 16 going into effect.  *Id.*

24

Either way, such a statement in dicta about due process lacks preclusive effect.[5]

### c.    Claim Preclusion Bars Plaintiff's Bill of Attainder Claim

Related to yet distinct from issue preclusion is the doctrine of claim preclusion, or *res judicata*.  Under New York's claim preclusion doctrine, "a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter."  *In re Hunter*, 4 N.Y.3d 260, 269 (2005).  In fact, claim preclusion extends further than issue preclusion and "broadly bars the parties or their privies from relitigating issues that were or *could have* been raised in [the earlier] action."  *Paramount Pictures Corp.* v. *Allianz Risk Transfer AG*, 31 N.Y.3d 64, 72 (2018) (citing *Cromwell* v. *County of Sac*, 94 U.S. 351, 352 (1877)).

New York law employs a "transactional analysis approach to res judicata[;] 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'"  *In re Hunter*, 4 N.Y.3d at 269 (quoting *O'Brien* v. *City of Syracuse*, 54 N.Y.2d 353, 357 (1981)).  "The rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation."  *Id.*

---

[5]    That said, the parties are correct that *Detering II* bars Plaintiff's Contracts Clause and breach of contract claims because the key question for those claims — whether Plaintiff and the City entered into a valid contract under the Noise Code — does not hinge on when the City adjudicates violations.  (*See* Pl. Opp. 5 n.2; Def. Reply 4).  Conversely, the validity of Plaintiff's Takings Clause and retroactivity claims may depend on when complaints from before Local Law 16's effective date were adjudicated.

### i.       Plaintiff Could Have Brought His Bill of Attainder Claim in the Earlier State Court Action

Plaintiff alleges here that Local Law 16 constitutes an improper bill of attainder.  (FAC ¶¶ 101-105).  The Constitution provides that "[n]o Bill of Attainder … shall be passed," U.S. Const. art. I § 9, cl. 3, and it specifically restricts states from "pass[ing] any Bill of Attainder," *id.*, § 10, cl. 1.  "Briefly stated, a constitutionally proscribed bill of attainder is 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'"  *Consol. Edison Co. of N.Y.* v. *Pataki*, 292 F.3d 338, 346 (2d Cir. 2002) (quoting *Nixon* v. *Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977)).

The three elements of a bill of attainder claim are "[i] 'specification of the affected persons,' [ii] 'punishment,' and [iii] 'lack of a judicial trial.'"  *ACORN* v. *United States*, 618 F.3d 125, 136 (2d Cir. 2010) (quoting *Selective Serv. Sys.* v. *Minn. Pub. Int. Rsch. Grp.*, 468 U.S. 841, 847 (1984)).  "The party challenging the statute has the burden of 'establishing that the legislature's action constituted punishment and not merely the legitimate regulation of conduct.'"  *Consol. Edison Co. of N.Y.*, 292 F.3d at 350 (alteration adopted) (quoting *Nixon*, 433 U.S. at 476 n.40).

Plaintiff alleges that Local Law 16 was an improper bill of attainder because (i) one councilmember and one DEP official made comments — not naming Plaintiff — to the effect that certain citizen enforcers were using the Noise Code to "essentially … perpetuate a scam" (FAC ¶ 76(f); *see also id.* ¶¶ 76-77 (listing other similar, if not more innocuous, comments)); (ii) one

26

police officer called his summonses "fake" (*id.* ¶¶ 78-79); and (iii) one news article quoted a DEP spokesperson who stated that Local Law 16 would provide "common-sense changes to the noise code" (*id.* ¶ 80 & n.5).

Plaintiff did not raise a bill of attainder claim in the state court action. *See Detering I*, 2024 WL 2999114, at *3 (discussing Mr. Detering's claims and not mentioning a bill of attainder claim). (*See Detering I* Amended Petition ¶¶ 184-208 (failing to allege that Local Law 16 constitutes a bill of attainder)). Claim preclusion would thus bar Plaintiff's bill of attainder claim if (i) Plaintiff "could have raised" the claim in state court, (ii) the claim "aris[es] out of the same transaction or series of transactions" at issue in the state court, and (iii) the state court action has reached "a final conclusion." *In re Hunter*, 4 N.Y.3d at 269.[6]

Each requirement is met. *First*, Plaintiff could have raised his bill of attainder claim in state court. Such a claim challenges the *passage* of Local Law 16 (*see* FAC ¶ 75 ("Local Law 16 was *passed* targeting Plaintiff and those

---

[6]    It does not matter that the City is not technically one of the *Detering I* Defendants. (*See generally Detering I* Amended Petition). As explained above, claim preclusion does not require strict identity of parties; it only requires privity. *See, e.g., Ferris* v. *Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997) ("Following a valid final judgment, … *res judicata* bars future litigation between the same parties, *or those in privity with them*, on the same cause of action." (emphasis added)). Here, the City — the Defendant in the instant action — and various city agencies, the City Council, and the Mayor — the *Detering I* Defendants — are in privity for purposes of claim preclusion. *See, e.g., Brodsky* v. *N.Y.C. Campaign Fin. Bd.*, 796 F. App'x 1, 4-5 (2d Cir. 2019) (summary order) ("Weisman is in privity with the Board because she is being sued in her official capacity as the Board's counsel and … [b]ecause the Board is a New York City Agency, the City is also in privity with the Board[.]"); *Patton* v. *Dumpson*, 498 F. Supp. 933, 943 (S.D.N.Y. 1980) ("Municipal corporations and their officials are treated as being in privity for purposes of suits by or against either one."); *Chestnut Hill NY, Inc.* v. *City of Kingston*, No. 25 Civ. 368 (BKS) (DJS), 2026 WL 764641, at *9 (N.D.N.Y. Mar. 18, 2026) (explaining that "City entities … are in privity with the City for purposes of res judicata").

27

like him personally.")), not its *application* to summonses adjudicated before the law's effective date, which Plaintiff may not have known about during the state court action.  There is no suggestion that Plaintiff found out about the circumstances surrounding Local Law 16's passage after commencing the state court action.  (*See, e.g., id.* ¶¶ 78-79 (admitting that Plaintiff himself received the message from the police officer calling his summonses "fake")).  Indeed, Plaintiff raised other constitutional challenges to the law's passage in the state court action.  *See Detering I*, 2024 WL 2999114, at *3 (discussing Plaintiff's claims under the Takings Clause, Due Process Clause, and Contracts Clause).  (*See Detering I* Amended Petition ¶¶ 181, 207-208).  In sum, there is no reason that he could not have raised his bill of attainder claim in the state action.  *See In re Hunter*, 4 N.Y.3d at 269.

*Second*, Plaintiff's bill of attainder claim arises out of the same facts as were at issue in the state court action.  The public hearings that supply Plaintiff's allegations in support of his bill of attainder claim here were key events in the state court litigation as well.  (*See Detering I* Amended Petition ¶¶ 37-41, 124-126, 202).  And as explained above, while the instant litigation largely focuses on the application of Local Law 16 to a certain subset of summonses, the state court action largely concerned the passage of Local Law 16.  The transaction at issue in the state court action — the passage of Local Law 16 — is also at issue in Plaintiff's bill of attainder claim.  *See In re Hunter*, 4 N.Y.3d at 269.

28

*Third*, and finally, the state court action reached a final conclusion when the First Department issued its ruling. *See generally Detering II*, 244 N.Y.S.3d 335. This would be the case even if Mr. Detering had appealed *Detering II*, as under New York law, the determination of a state court "is entitled to *res judicata* effect, even though the [party] may be appealing that determination." *Petrella* v. *Siegel*, 843 F.2d 87, 90 (2d Cir. 1988); *accord, e.g., Haxhijaj-Sayegh* v. *City of Yonkers*, No. 24 Civ. 3622 (NSR), 2026 WL 880644, at *6 (S.D.N.Y. Mar. 30, 2026); *cf. DiSorbo* v. *Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) (noting that "under New York law, 'the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding'" (quoting *Amica Mut. Ins. Co.* v. *Jones*, 445 N.Y.S.2d 820, 822 (2d Dep't 1981))). Accordingly, *Detering II* precludes Plaintiff's bill of attainder claim even though he did not raise that exact claim in his state court action. *See In re Hunter*, 4 N.Y.3d at 269.

Plaintiff argues that claim preclusion does not apply because the summonses at issue here are different than those at issue in the state court action. (Pl. Opp. 13). But that does not matter, as his bill of attainder claim relates to the passage of Local Law 16, not its application to summonses adjudicated before the effective date. Unlike Plaintiff's Takings Clause and retroactivity claims, he could have brought his exact bill of attainder claim together with his Contracts Clause claim (and other claims) in the state court litigation. Claim preclusion thus prevents Plaintiff from raising his bill of attainder claim for the first time now before this Court.

###### ii.    Regardless, Plaintiff Has Failed to State a Bill of Attainder Claim

In any event, the Court notes that it would dismiss Plaintiff's bill of attainder claim on the merits even if claim preclusion did not apply.  Plaintiff's allegations come nowhere near stating a claim.  That is because, even assuming that Local Law 16 specifies the affected persons, it does not constitute punishment without a judicial trial.  *See ACORN*, 618 F.3d at 136.

When assessing whether a challenged law constitutes punishment, courts consider three factors: "[i] whether the challenged statute falls within the historical meaning of legislative punishment (historical test of punishment); [ii] whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes' (functional test of punishment); and [iii] whether the legislative record 'evinces a legislative intent to punish' (motivational test of punishment)."  *ACORN*, 618 F.3d at 136 (alteration adopted) (quoting *Selective Serv. Sys.*, 468 U.S. at 852).  "All three factors need not be satisfied to prove that the law constitutes 'punishment'; rather, 'the factors are the evidence that is weighed together in resolving a bill of attainder claim.'"  *Id.* (alteration adopted) (quoting *Consol. Edison Co. of N.Y.*, 292 F.3d at 350).

Plaintiff's assertions do not satisfy any of these tests of punishment.  Local Law 16 reduces the bounty amounts available to citizen complainants, which is a typical regulatory action that does not fit "within the historical meaning of legislative punishment."  *ACORN*, 618 F.3d at 136.  Indeed, the Second Circuit has explained that "[t]he withholding of appropriations ... does

30

not constitute a traditional form of punishment," unlike "imprisonment, banishment, [ ]or death."  *Id.* at 137.

As Plaintiff points out, the "confiscation of property" may qualify as punishment.  *Consol. Edison Co. of N.Y.*, 292 F.3d at 351.  (*See* Pl. Opp. 12). But the Second Circuit has noted its "[un]certain[ty] that a 'deprivation' is the same thing as a 'confiscation.'"  *Consol. Edison Co. of N.Y.*, 292 F.3d at 351 (internal quotation marks omitted) (citing *Duquesne Light Co.* v. *Barasch*, 488 U.S. 299, 307, 310, 313-14 (1989)).  At most, Local Law 16 deprives Plaintiff of funds he hoped to receive in the future; it does not confiscate Plaintiff's property.  Therefore, it is not a traditional form of punishment.  *See id.*

Local Law 16 also fails the functional test of punishment because it has a "non-punitive purpose."  *Consol. Edison Co. of N.Y.*, 292 F.3d at 351-52.  As Plaintiff pleads, the City argues that it passed Local Law 16 to, among other things, "reduce the volume of summonses," prevent "local businesses [from] being unfairly burdened," and "allow DEP inspectors to focus on legitimate noise complaints."  (FAC ¶¶ 76-77).  To effectuate these goals, Local Law 16 capped the payments made to citizen enforcers of certain provisions of the Noise Code.

It is hard to imagine a more proportional response.  The City simply decreased bounties available to citizen enforcers; it did not fine citizen enforcers for previously brought summonses, confiscate all previously awarded bounties, or prohibit certain citizen enforcers from using the law in the future. Accordingly, "[o]n the facts of this case, [the City's] response is not so out of

31

proportion to its purported non-punitive goal[s] ... so as to render [Local Law 16] punitive in nature." *ACORN*, 618 F.3d at 141.

Finally, Local Law 16 fails the motivational test of punishment. Under this test, the record must "reflect[ ] overwhelmingly a clear legislative intent to punish." *ACORN*, 618 F.3d at 141 (citing *Flemming* v. *Nestor*, 363 U.S. 603, 617 (1960)). In other words, "[s]tatements by a smattering of legislators" are insufficient to demonstrate the required "unmistakable evidence of punitive intent." *Id.* (internal quotation marks omitted) (quoting *Selective Serv. Sys.*, 468 U.S. at 856 n.15). Yet Plaintiff has pleaded even less than "smattering" of comments here. *Id.*

Plaintiff focuses on comments by two participants in Local Law 16's hearing process, neither of whom mentioned Plaintiff by name. (FAC ¶¶ 76-77). That is fewer than the nearly ten Congressmembers who "assailed [the plaintiff]" *by name* during the hearings leading up to the passage of the law at issue in *ACORN*. *See* 618 F.3d at 141-42. And yet still, the Second Circuit in *ACORN* still found those facts "insufficient to establish ... the clearest proof of punitive intent." *Id.* at 142-43. Plaintiff's allegations demonstrate far less of a punitive motivation, which compels the same result here.

Consequently, even if Plaintiff's bill of attainder claim were not precluded, it would still fail. It therefore must be dismissed with prejudice, which leaves three remaining causes of action: Plaintiff's Takings Clause, retroactivity, and quasi-contract claims. The Court next considers whether Plaintiff has stated a claim for each.

### 3. Plaintiff Has Not Stated a Takings Clause Claim

To review, the *Detering II* court commented in dicta that Plaintiff lacks a vested property right under the Takings Clause until the City receives payment on the summonses. 247 N.Y.S.3d at 338. Though this Court explained, *supra,* why that comment lacks preclusive effect, it nonetheless agrees with the analysis. As a result, the Court must dismiss Plaintiff's Takings Clause claim on the merits.

As explained above, the Takings Clause only protects "*vested* property rights." *Landgraf*, 511 U.S. at 266 (emphasis added). When considering whether a vested property right exists under federal law, the court must first examine the nature of the property interest as supplied by state law. *See Cedar Point Nursery* v. *Hassid*, 594 U.S. 139, 155 (2021) ("[I]t is true that the property rights protected by the Takings Clause are creatures of state law."); *Stop the Beach Renourishment, Inc.* v. *Fla. Dep't of Env't Prot.*, 560 U.S. 702, 732 (2010) ("The Takings Clause only protects property rights as they are established under state law, not as they might have been established or ought to have been established."). But while state law supplies the individual with the property interest, the question of whether that property interest qualifies for protection under the Takings Clause is a question of federal law. *See 1256 Hertel Ave. Assocs.*, 761 F.3d at 262 ("[W]e look first to state law to define the contours of the purported property interest, and then to federal constitutional law to determine whether that interest merits constitutional protection as a property interest.").

33

Here, the Noise Code establishes the property interest. Under the Noise Code, even after a summons is adjudicated, the ECB "may remit, in whole or in part, [the] penalty, if … the respondent is no longer in violation." N.Y.C. Admin. Code § 24-257(b)(5). Further, the Noise Code specifies that any award to the citizen complainant would come "out of the proceeds collected." N.Y.C. Admin. Code § 24-261(d)-(e). In other words, the ECB must receive payment from the violator before the agency can distribute any compensation.

As these provisions make plain, the process between the City assessing a fine under the Noise Code and a citizen complainant being entitled to proceeds is filled with contingencies. The City may choose to remit the penalty. The City must then also collect on the penalty, which is far from a guarantee.

Therefore, Plaintiff lacks a vested property interest under federal law sufficient to trigger the Takings Clause until *at least* the time that the violator pays the fine. *See Bowers*, 671 F.3d at 913 (explaining that the Takings Clause does not protect "contingent and uncertain" property interests (internal quotation marks omitted) (quoting *Engquist*, 478 F.3d at 1003-04)). Indeed, for complaints that the DEP prosecutes, a citizen enforcer *never* obtains a vested property right because in that context, the citizen complainant is entitled to a "fair and reasonable" award that "shall not exceed 25 percent of the proceeds collected," N.Y.C. Admin. Code § 24-261(d), meaning that the citizen complainant may not be entitled to anything at all, *see Bowers*, 671 F.3d at 913 (explaining that the Takings Clause does not protect "discretionary"

interests (internal quotation marks omitted) (quoting *Engquist*, 478 F.3d at 1003-04)).

The City is right to analogize the Noise Code's citizen enforcement regime to the framework of a *qui tam* action. (Def. Br. 11-12). In that context, "federal courts have consistently recognized that amendments to *qui tam* statutes that interfere with a relator's pending action do not 'deprive him of rights guaranteed by the Constitution,'" at least "prior to final judgment." *Brooks* v. *Dunlop Mfg. Inc.*, 702 F.3d 624, 632 (Fed. Cir. 2012) (internal quotation marks omitted) (quoting *United States ex rel. Rodriguez* v. *Wkly. Publ'ns, Inc.*, 144 F.2d 186, 188 (2d Cir. 1944)). The same is true here. Plaintiff may only raise a Takings Clause claim to the extent that (i) he prosecuted the complaint and (ii) the violator paid the City *before* Local Law 16 went into effect — thus removing the final contingencies.

Plaintiff makes no such allegations here. Instead, Schedule A establishes that the City still has not collected payment for most of Plaintiff's challenged summonses. (Schedule A). And of those that have already been paid, there is no indication that the payment was received prior to Local Law 16's effective date. (*See id.* (noting that payment on those summonses was provided to Plaintiff *after* Local Law 16's effective date); Def. Br. 12 (suggesting that Plaintiff was entitled to the diminished amount only "as to the proceeds *collected after* Local Law 16 became effective" (emphasis added))). Consequently, Plaintiff has no valid Takings Clause claim.

35

Plaintiff's arguments to the contrary are unavailing. He spends ample time discussing two New York Court of Appeals cases — *Alliance of American Insurers* v. *Chu*, in which the Court of Appeals held that a plaintiff had a vested property interest, and *American Economy Insurance Co.* v. *State*, in which the Court of Appeals reached the opposite conclusion. (Pl. Opp. 7-9). *Compare Alliance of Am. Insurers* v. *Chu*, 77 N.Y.2d 573, 584-89 (1991) (holding that plaintiffs had a vested property right), *with Am. Econ. Ins. Co.* v. *State*, 30 N.Y.3d 136, 155-57 (2017) (holding that plaintiffs' alleged property right "was inchoate and subject to contingencies," and thus did not merit protection from the Takings Clause).

Reasoning from those cases, Plaintiff argues that the Noise Code's "fair and reasonable compensation" language is more comparable to *Chu* than *American Economy Insurance Co.* (Pl. Opp. 8-9). In *Chu*, the statute provided that "income earned on … contributions to [a] fund would be either returned to the contributors or credited toward future contributions." 77 N.Y.2d at 580-81. And the Court of Appeals reasoned that "[a]t a minimum, these provisions obligated the State to act in good faith with respect to the fund." *Id.* at 587. Plaintiff argues that the Noise Code similarly requires the City to act in good faith, which means that Plaintiff's property right is vested. (Pl. Opp. 9).

But Plaintiff's argument on this point suffers from two fatal flaws. *First*, as explained above, Plaintiff's focus on whether New York law considers Plaintiff's property right vested misunderstands the Takings Clause analysis. Courts only look "to state law to define the contours of the purported property

36

interest, and then to federal constitutional law to determine whether that interest merits constitutional protection as a property interest." *1256 Hertel Ave. Assocs., LLC*, 761 F.3d at 262. Consequently, whether the New York Court of Appeals considers a property right vested for purposes of the Takings Clause has only persuasive authority for this Court. *See Charles W.* v. *Maul*, 214 F.3d 350, 357 (2d Cir. 2000) ("State court decisions, like the decisions of other federal lower courts, are relevant and often persuasive. Yet, we are in no way obliged to enforce them."). Accordingly, while *Chu* may be persuasive, it is not binding.

*Second*, and more importantly, Plaintiff's analysis ignores the key language in the Noise Code, which distinguishes this case from *Chu*. He repeatedly argues that the "fair and reasonable compensation" language in the Noise Code "granted Plaintiff a vested property right in money that Defendant collected." (Pl. Opp. 8-9). But dispositive here is that the Noise Code entitles Plaintiff to payment only "out of the proceeds collected." N.Y.C. Admin Code § 24-261(d)-(e). This is the most important — though not the only — contingency in the Noise Code between the filing of the complaint and entitlement to payment, and Plaintiff neglects to mention it.

The Noise Code thus differs from the statute in *Chu*, which provided an entitlement to "income earned on … contributions" without contingency. 77 N.Y.2d at 580-51. Consequently, Plaintiff has no vested property right in proceeds from summonses on which the City has not yet collected, and his Takings Clause claim must be dismissed with prejudice.

37

4.    **Plaintiff Has Stated a Valid Due Process Claim by Virtue of Local Law 16's Retroactive Application**

Plaintiff also argues that the City has retroactively applied Local Law 16 in violation of due process.  (FAC ¶¶ 95-100).  The Court agrees, though not on the basis that the parties spend most of their time briefing.

There are two questions that a court must consider when assessing a claim for improper retroactivity:  Is the law retroactive as written, and, if so, may it be under the governing constitution?  *See Weil* v. *Metal Techs., Inc.*, 925 F.3d 352, 356 (7th Cir. 2019) (considering whether a law applied retroactively under Indiana law as a matter of statutory interpretation and explaining that the Indiana legislature's intent would govern unless "Indiana's new statute deprives [the plaintiffs] of a vested right or constitutional guarantee").  The Court considers the application of each question to the instant case in light of the fact that Plaintiff has alleged only a federal due process, and not a state law, claim.  (*Id.*).

a.    ***Landgraf* and Its State Equivalent Are Irrelevant to Plaintiff's Due Process Claim**

The first question — whether the law is retroactive as written — is the issue on which the parties spend most of their time briefing.  (Def. Br. 12-13; Pl. Opp. 21-22; Def. Reply 6-7).  Yet as the Court will explain, that question is entirely irrelevant to Plaintiff's federal claim.

i.    ***Landgraf* Supplies a Test for Statutory Interpretation**

Whether a statute is retroactive as written is a question of statutory interpretation.  *See Landgraf*, 511 U.S. at 263-64, 278-80 (noting that the

38

question of retroactively implicates "different canons of statutory construction" and establishing a new interpretive test to determine when a statute is retroactive). When a party challenges the retroactivity of a federal law, the Supreme Court's decision in *Landgraf* v. *USI Film Products*, 511 U.S. 244, supplies the test for when a court should interpret the law to operate retroactively.

Under *Landgraf*, "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." 511 U.S. at 280. "If Congress has done so," the court gives effect to Congress's "express command." *Id.* If not, the court asks whether "whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the court determines that the statute would operate retroactively "absent clear congressional intent," the "traditional presumption [against retroactivity] teaches that" the law cannot operate as such. *Id.* The *Landgraf* test thus formalizes the principle that a law requires "clear congressional intent authorizing retroactivity." *Id.* at 272.

If a court applying *Landgraf* determines that a law is not retroactive, the application of that law retroactively is merely an error in interpretation. It has no inherent constitutional dimension. *See Landgraf*, 511 U.S. at 286 (holding merely that the statute at issue could not "apply to cases arising before its enactment," but making no constitutional holding); *United States* v. *Bryan*, 13 U.S. (9 Cranch) 374, 385 (1815) ("Laws having a retrospective effect in civil

39

cases, both as to rights and remedies, have never been, on that account alone, deemed unconstitutional.").  In other words, *Landgraf* does not establish any constitutional rule against retroactivity.

Of course, *Landgraf* recognizes that "the antiretroactivity principle finds expression in several provisions of our Constitution."  511 U.S. at 266.  But that statement simply guides the Court's creation of a rule of statutory interpretation; it does not establish a constitutional cause of action for retroactivity.  *Landgraf* itself stated as much, explaining that "[a]bsent a violation of one of [the Constitution's] specific provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope."  *Id.* at 267.

### ii.      An Improper Implementation of Local Law 16 Is an Error of State Law, Which Plaintiff Has Not Pleaded

The distinction between an error in statutory interpretation and a violation of the Constitution is important because an error in statutory interpretation is only a violation of federal law if the underlying statute is federal.  If the underlying law is a municipal law, as here, an error of statutory interpretation is one of state law.  *See, e.g.*, *Fallon* v. *State Bd. of Elections of N.Y.*, 408 F. Supp. 636, 639 (S.D.N.Y. 1976) ("Whether the state agency's interpretation [of state law] is wrong is not a question of federal law at all so long as the interpretation does not render the statute unconstitutional.").  Further, it is axiomatic that an error of state law does not automatically "rise to the level of a constitutional violation."  *Curtis* v. *Lacy*, No. 94 Civ. 5295 (JG), 1996 WL 1088930, at *2 (E.D.N.Y. Jan. 25, 1996) (citing *Aziz* v. *Warden of*

*Clinton Corr. Facility*, No. 92 Civ. 104 (JSM), 1992 WL 249888, at *10 (S.D.N.Y. Sept. 23, 1992); *see also Brown* v. *Harris*, 666 F.2d 782, 785 n.4 (2d Cir. 1981) (declining to reach a state law issue because the petitioner alleged no violation of a constitutional right), *cert. denied*, 446 U.S. 948 (1982); *Colon* v. *Annucci*, 344 F. Supp. 3d 612, 636 n.14 (S.D.N.Y. 2018) ("[T]he failure to follow a state law … alone does not violate due process." (collecting cases)).

Given this distinction, the *Landgraf* test has no relevance here because Plaintiff asserts only that the retroactive application of a municipal law gives rise to a federal constitution claim — in other words, he alleges no error of state law. (*See* FAC ¶¶ 95-100). The parties appear to recognize *Landgraf*'s irrelevance by pointing out that the New York Court of Appeals has adopted the *Landgraf* test as a part of New York law. (Def. Br. 12-13; Pl. Opp. 21-22; Def. Reply 6-7). *See Regina Metro. Co.* v. *N.Y. State Div. of Hous. & Comm. Renewal*, 35 N.Y.3d 332, 365-66 (2020) (explaining the *Landgraf* test and its adoption under state law).

But the parties appear to miss the implications of their focus on New York law. They spar over the application of the *Landgraf* test despite the fact that, for Plaintiff's retroactivity claim, *Landgraf* offers no guidance. (Def. Br. 12-13; Pl. Opp. 21-22; Def. Reply 6-7). Accordingly, Plaintiff lacks a federal claim based on an improper statutory interpretation under *Landgraf* or its New

41

York equivalent.[7]  That does not mean, however, that Plaintiff lacks a federal cause of action based on Local Law 16's retroactive application.

### b.    Plaintiff Has Nonetheless Stated a Valid Due Process Claim

Though *Landgraf* applies only to the first question of retroactivity — whether a law is retroactive as written — the Court still must consider the second question of whether the Constitution permits the statute to apply retroactively.  *See Weil*, 925 F.3d at 356; *Landgraf*, 511 U.S. at 267 (explaining that even given "the potential unfairness of retroactive civil litigation," a court may only "fail to give a statute its intended scope" if it finds "a violation of" the Constitution).  Of course, this question is relevant regardless of whether the underlying statute is federal or municipal.  *See, e.g.*, *Island Park, LLC* v. *CSX Transp.*, 559 F.3d 96, 101 (2d Cir. 2009) ("'[S]tate laws that interfere with, or are contrary to, federal law' must be invalidated." (quoting *Hillsborough County* v. *Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 712 (1985))); *Cohens* v. *State of Virginia*, 19 U.S. 264, 414 (1821) ("The constitution and laws of a State, so far as they are repugnant to the constitution and laws of the United States, are absolutely void.").  And because the question asks whether a statute violates the U.S. Constitution, a plaintiff that pleads an affirmative answer successfully may maintain a federal cause of action under Section 1983.

---

[7]    Given that Plaintiff has pleaded no state law retroactivity claim (*see* FAC ¶¶ 95-100), the Court need not consider whether Local Law 16, as written, applies retroactively under *Landgraf*'s New York equivalent.  That said, on first blush, the Court tends to agree that Plaintiff has the better argument: that Local Law 16 does not apply retroactively as a matter of statutory interpretation.

The Court has already rejected Plaintiff's other constitutional claims, *supra*, so it is left with his due process claim. The Court begins by noting that it is "well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality." *Usery* v. *Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). Indeed, the scope of a court's judicial review of economic legislation under the Due Process Clause is "limited." *Pension Benefit Guar. Corp.* v. *R.A. Gray & Co.*, 467 U.S. 717, 731 (1984).

That said, "[r]etroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions." *Gen. Motors Corp.* v. *Romein*, 503 U.S. 181, 191 (1992). Consequently, "retroactive legislation does have to meet a burden not faced by legislation that has only future effects." *Pension Benefit Guar. Corp.*, 467 U.S. at 730. Specifically, "the retroactive application of the legislation [must be] itself justified by a rational legislative purpose." *Id.*; *see also Gen. Motors Corp.*, 503 U.S. at 191.

The Supreme Court has found retroactive application to satisfy this rationality review when, for example, (i) a statute's retroactive liability helped "spread the costs … to those who have profited" from the lack of prior regulation, *Usery*, 428 U.S. at 18; (ii) a statute imposed time-limited retroactivity to "prevent employers from taking advantage of a lengthy legislative process" to act in a way Congress was soon to make unlawful,

43

*Pension Benefit Guar. Corp.*, 467 U.S. at 731; (iii) a statute's retroactivity

"correct[ed] the unexpected results of" a Michigan Supreme Court decision,

*Gen. Motors Corp.*, 503 U.S. at 191; and (iv) a statute's retroactivity ensured

that similar situated persons bore similar financial burdens of a program,

*United States* v. *Sperry Corp.*, 493 U.S. 52, 64-65 (1989).

###### i.      The City Is Applying Local Law 16 Retroactively

A preliminary issue here is whether the City's practice of applying Local

Law 16 to summonses adjudicated before its effective date is, in fact, a

retroactive application of Local Law 16.  A law has retroactive effect if it is being

applied in a way that "takes away or impairs vested rights acquired under

existing laws, or creates a new obligation, imposes a new duty, or attaches a

new disability, in respect to transactions or considerations already past."

*Landgraf*, 511 U.S. at 269 (internal quotation marks omitted) (quoting *Soc'y for

the Propagation of the Gospel* v. *Wheeler*, 22 F. Cas. 756, 767 (Story, Circuit

Justice, C.C.D.N.H. 1814) (No. 13,156)).  Put another way, "a statute is [being

applied] retroactive[ly] if it imposes 'new legal consequences to events

completed before its enactment.'"  *Domond* v. *INS*, 244 F.3d 81, 85 (2d Cir.

2001) (quoting *Landgraf*, 511 U.S. at 270).

"Courts should rely on 'familiar considerations of fair notice, reasonable

reliance, and settled expectations' for guidance in determining retroactive

effect."  *Domond*, 244 F.3d at 85 (quoting *Landgraf*, 511 U.S. at 270).

Furthermore, as the Supreme Court has recognized, "whether 'a particular

application is retroactive will depend upon what one considers to be the

determinative event by which retroactivity or prospectivity is to be calculated.'"
*Martinez* v. *INS*, 523 F.3d 365, 373 (2d Cir. 2008) (alteration adopted) (quoting
*Republic Nat'l Bank of Mia.* v. *United States*, 506 U.S. 80, 100 (1992) (Thomas,
J. concurring)).

Here, the determinative event is, at the latest, when the City adjudicated
the summonses. *See Landgraf*, 511 U.S. at 265 ("[T]he legal effect of conduct
should ordinarily be assessed under the law that existed when the conduct
took place." (internal quotation marks omitted) (quoting *Kaiser Aluminum &
Chem. Corp.* v. *Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring))). At
that point, nearly the entire process leading to Plaintiff's recovery had been
completed. *See Landgraf*, 511 U.S. at 270. And Plaintiff could reasonably
expect his recovery of at least some proceeds under the pre-Local Law 16
bounty regime. *See id.* at 269.

Because the City is applying Local Law 16 to summonses adjudicated
before Local Law 16's effective date, the City has changed the "legal
consequences to events completed before [Local Law 16's] enactment."
*Domond*, 244 F.3d at 85 (quoting *Landgraf*, 511 U.S. at 270). Namely, the City
has greatly reduced Plaintiff's entitlement to fees from already adjudicated
violations. Applying the Court's "sound instincts," *Landgraf*, 511 U.S. at 270
(internal quotation marks omitted and alterations adopted) (quoting *Danforth* v.

45

*Gorton Water Co.*, 59 N.E. 1033, 1034 (Mass. 1901) (Holmes, J.)), that is enough to determine that the City is applying Local Law 16 retroactively.[8]

### ii.   No Rational Legislative Purpose Supports Local Law 16's Application to Adjudicated Summonses

Having found that the City is applying Local Law 16 retroactively, the Court turns to the question of whether such an application is "itself justified by a rational legislative purpose" and thus comports with the Due Process Clause. *Pension Benefit Guar. Corp.*, 467 U.S. at 730.  At this stage of the pleadings, the Court cannot say that it is, so Plaintiff's due process claim survives.

As explained above, the City argues that it passed Local Law 16 to, among other things, "reduce the volume of summonses," prevent "local businesses [from] being unfairly burdened," and "allow DEP inspectors to focus on legitimate noise complaints."  (FAC ¶¶ 76-77).  These are all undeniably legitimate legislative purposes for the law's prospective effect.  But notably, *none* of them supports applying Local Law 16 to summonses already adjudicated.

Such a retroactive application has no effect on the volume of summonses because the summonses at issue have already been both brought and adjudicated.  It also does not provide relief to local businesses because penalties have already been assessed, and the City continues to collect on

---

8       The City argues that its application of Local Law 16 is not retroactive because Plaintiff had neither "contract rights" nor "a vested property right … when Local Law 16 became effective."  (Def. Br. 13; Def. Reply 6).  But such a formulation conflates the test for retroactivity with the test for other constitutional violations, a proposition for which the City can offer no support.

them.  Certainly, if the City wished for Local Law 16 to apply retroactively because it believed that Plaintiff was bringing false complaints, the City would decline to collect the penalties.  Finally, because hearings have already occurred on the summonses at issue, the DEP need not devote any more time to their adjudication.

This case sits in sharp contrast to a Federal Circuit case, *Brooks* v. *Dunlop Mfg. Inc.*, 702 F.3d 624 (Fed. Cir. 2012).  There, the court considered the constitutionality of a law that eliminated a *qui tam* provision and specified that it retroactively applied to cases brought under that provision that remained pending.  *Id.* at 626.  The court upheld the retroactive application of the statute against a due process claim, explaining that Congress rationally intended "to reduce the litigation expenditures in the large number of complaints filed, but not yet subject to a final judgment."  *Id.* at 629 (internal quotation marks omitted) (quoting *Rogers* v. *Tristar Prods., Inc.*, 559 F. App'x 1042, 1045-46 (Fed. Cir. 2012) (unpublished per curiam order)).

*Brooks* suggests that the City would have a rational basis to apply Local Law 16 to summonses that had been brought but had not been adjudicated to completion.  But that is not the case here.  Unlike in *Brooks*, the City's retroactive application of Local Law 16 will have no effect on litigation expenditures, given that all the relevant summonses are already "subject to a final judgment."  *Brooks*, 702 F.3d at 629 (internal quotation marks omitted) (quoting *Rogers*, 559 F. App'x at 1045-46).

47

The only conceivable purpose that the Court can divine for the retroactive application of Local Law 16 is to allow the City to retain more funds vis-à-vis Plaintiff.  But that is irrational in this context because the City nowhere offered increased revenue as a goal of Local Law 16.  In fact, the law capped penalties for certain violations at $50, suggesting an overall intention to decrease the applicability of (or at least the revenues generated from) the Noise Code.  *See* N.Y.C. Loc. Law 16/2024, § 2.

In sum, there is no rational basis for the City's retroactive application of Local Law 16 to summonses already adjudicated.  It does not help "spread the costs."  *Usery*, 428 U.S. at 18.  It does not correct an "unexpected" court decision.  *Gen. Motors Corp.*, 503 U.S. at 191.  It does not evenly distribute financial burdens.  *Sperry Corp.*, 493 U.S. at 64-65.  It only retracts a benefit from Plaintiff that he reasonably expected to receive based on conduct that had already occurred, perhaps as a way to spite him.  Accordingly, the Court denies the City's motion to dismiss Plaintiff's due process claim.

### 5.    Plaintiff Has Not Stated a Valid Quasi-Contract Claim

Plaintiff's final claim is based on a theory of unjust enrichment.  (FAC ¶¶ 114-122).  "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement.*"  *LBA Int'l Ltd.* v. *C.E. Consulting LLC*, No. 08 Civ. 6797 (SAS), 2010 WL 778019, at *3 (S.D.N.Y. Mar. 5, 2010) (internal quotation marks omitted) (quoting *Beth Isr. Med. Ctr.* v. *Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 586-87 (2d Cir. 2006)).  As the name implies, unjust enrichment is an "enrichment" that

"was unjust." *Precision Testing Lab'ys, Ltd.* v. *Kenyon Corp. of Am.*, 644 F. Supp. 1327, 1350 (S.D.N.Y. 1986). To recover under a quasi-contract theory in New York, "a plaintiff must establish [i] that the defendant benefited; [ii] at the plaintiff's expense; and [iii] that equity and good conscience require restitution." *LBA Int'l Ltd.*, 2010 WL 778019, at *3 (internal quotation marks omitted) (quoting *Kaye* v. *Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).

Plaintiff's theory on this argument is relatively straightforward. (*See* Pl. Opp. 14-15). He conferred a benefit on the City by investigating and prosecuting summonses that resulted in violations. The City collected fines because of Plaintiff's efforts. And then, applying Local Law 16 retroactively, the City retained a larger share of the recovery than it would have under the pre-Local Law 16 regime. Good conscience should not allow the City to retain funds that it promised to Plaintiff to induce him into taking efforts that resulted in the City's enrichment.

The problem with Plaintiff's theory is that, in New York, "it is not appropriate to substitute unjust enrichment to avoid the statutory limitations ... created by [a] [l]egislature." *Sperry* v. *Crompton Corp.*, 8 N.Y.3d 204, 216 (2007). Here, because a statute governs the parties' rights, unjust enrichment in unavailable. Put in the parlance of unjust enrichment, the City's retention of the funds is not inequitable; it is an application of Local Law 16.

In this way, the instant case is distinguishable from *JobPath Partners, LLC* v. *City of New York*, No. 24 Civ. 9026 (CM), 2025 WL 2855372 (S.D.N.Y.

49

Oct. 8, 2025), a recent case from a sister court in this District. In that case, the court allowed a plaintiff to maintain an unjust enrichment claim against the City because the City allegedly used proprietary software that the plaintiff provided without providing payment to the plaintiff. *Id.* at *12-13. In that scenario, no statute governed the City's use of the software, so the plaintiff had a claim for unjust enrichment.

Here, by contrast, a City's alleged unjust enrichment was provided by a statute. If Plaintiff seeks to challenge such an inequity, he must challenge the statute, which he has successfully done here. *See Sperry*, 8 N.Y.3d at 216. Consequently, the Court dismisses Plaintiff's unjust enrichment claim with prejudice. *See, e.g.*, *E.J. Brooks Co.* v. *Cambridge Sec. Seals*, 31 N.Y.3d 441, 455 ("[Unjust enrichment] is a narrow [doctrine]: it is 'not a catchall cause of action to be used when others fail.'" (quoting *Corsello* v. *Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012))).

## CONCLUSION

For the reasons explained above, the City's motion to dismiss is GRANTED IN PART and DENIED IN PART. Of the claims the Court has considered, Plaintiff's Section 1983 due process claim based on the retroactive application of Local Law 16 may go forward, while his other claims fail as a matter of law. Plaintiff's Article 78 claim is dismissed without prejudice, while his remaining claims are dismissed with prejudice.

Further, Plaintiff has not sought leave to amend, and has already been granted leave to amend once; therefore, further leave to amend is DENIED.

*See, e.g., Gallop* v. *Cheney,* 642 F.3d 364, 369 (2d Cir. 2011) ("While leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' no court can be said to have erred in failing to grant a request that was not made." (citation omitted) (quoting Fed. R. Civ. P. 15(a))).

Defendant shall file its answer on or before **August 21, 2026**.  Further, the parties shall provide a joint letter and proposed case management plan on or before **September 4, 2026**.

The Clerk of Court is directed to terminate the pending motion at docket entry 22.

SO ORDERED.

Dated:    July 30, 2026
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

51